# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 33714

STATE OF IDAHO,

    Plaintiff-Appellant,

v.

CHRISTIAN REED SMITH,

    Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)

Boise, May 2007 Term

2007 Opinion No. 84

Filed: May 25, 2007

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Second Judicial District of the State of Idaho, Latah County. Honorable John R. Stegner, District Judge.

The decision of the district court is reversed.

Honorable Lawrence G. Wasden, Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Molly J. Huskey, State Appellate Public Defender, Boise, for respondent. Eric D. Fredericksen argued.

_____

SCHROEDER, Chief Justice.

Christian Smith is charged with manufacture of a controlled substance in violation of I.C. § 37-2732(a)(1)(B). The state appeals the district court's order suppressing evidence.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

At 1:44 p.m. on Sunday, May 2, 2004, the Moscow Fire Department was dispatched to a reported fire at 204 N. Adams Street where there is an old Victorian-style house converted into apartments. Jason Blubaum, the first firefighter to arrive at the scene, saw the burnt remnants of a couch in the driveway. Several individuals were standing nearby with a garden hose, and the ground was wet. They said that they did not know how the fire started but indicated that the couch belonged to one of their neighbors in the apartment complex. There were no visible flames or smoke coming from the house, but there was a trail of black soot and burn marks

leading from the couch back into the house and up the stairs to apartment number four. There was a hole in the wall by the stairwell with a note, signed by Christian Smith, the tenant of apartment four, apologizing for the damage and promising to clean it up after work.

The landlord let Blubaum into the apartment to investigate. Blubaum determined that no fire danger remained. He saw that the couch had been placed against a baseboard heater, which he thought may have caused the fire. A discharged fire extinguisher lay nearby. After three to five minutes inspecting the living room, he left the building to relate his findings to his commanding officer, Battalion Chief Aaron Watson, who had just arrived.

Chief Watson entered the apartment to perform his own inspection, accompanied by police officer Keith Cox. Watson asked Officer Cox to accompany him to witness what he did and "just to make sure everything's on the up and up." Watson determined that the heater was not the cause of the fire, but he was unable to determine exactly what happened without talking to the tenant. There appeared to be no fire extension into the walls. Watson and Cox observed a white ivory pipe and some marijuana seeds on the coffee table in the apartment. Cox picked up the pipe and smelled it to confirm that it was marijuana, then replaced it. Cox told Watson, "We need to leave."

Cox and Watson drove to Smith's workplace to question him about the fire. Apparently the couch had caught fire around 2:00 a.m. Smith extinguished the fire, but the couch continued to smolder. After several hours he and a friend carried it out to the driveway and hosed it down. Smith hosed it once more at about 6:30 a.m. before leaving for work, but it "just wouldn't [stop] burning."

Cox asked Smith whether he was doing any drugs but did not mention the items they had found. After several minutes of questioning Smith agreed to accompany Cox and Watson back to the apartment in the police car. Cox told Smith he was not being arrested or detained.

At the apartment complex, Cox informed Smith that they had been inside his apartment and seen the pipe and seeds. He asked Smith for permission to search the apartment and read a consent form to Smith. He explained that Smith had a right to refuse, but that if he did not consent the police would freeze the scene and obtain a search warrant. Smith hesitated and Cox gave him some time to think about it. Subsequently, another police officer urged Smith to decide quickly because they were busy that day and needed to know soon whether to start the process of obtaining a warrant. An officer told Smith that getting the warrant would be a hassle because

they would have to interrupt the judge's day off, and that the police could be more lenient if he cooperated. Smith questioned the officers about his options and, perceiving that a search of his apartment was inevitable, "rolled his eyes" and signed the form. Officer Cox searched the apartment with Smith present and found a growing marijuana plant. Smith was charged with manufacturing marijuana.

The district court granted Smith's motion to suppress, finding that any exigency dissipated when Blubaum left the apartment, and that Smith's subsequent consent to search was involuntary. The Court of Appeals reversed. This Court granted Smith's petition for review.

## II.
## STANDARD OF REVIEW

When considering a case on review from the Court of Appeals, this Court directly reviews the decision of the trial court but gives serious consideration to the views of the Court of Appeals. *State v. Klingler*, 143 Idaho 494, 495-96, 148 P.3d 1240, 1241-42 (2006). In reviewing an order granting or denying a motion to suppress evidence, the Court defers to the trial court's factual findings unless they are clearly erroneous; however, the Court freely reviews the determination as to whether constitutional requirements have been satisfied in light of the facts found. *Id*.

## III.
## EXIGENT CIRCUMSTANCES JUSTIFIED BLUBAUM AND WATSON'S ENTRY INTO THE APARTMENT

The evidence Smith seeks to suppress was discovered during the later search of his apartment pursuant to his consent. Smith's consent was based on the evidence already obtained from his apartment. A finding that it was illegally acquired would render his subsequent consent ineffective.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches. The Fourth Amendment applies to firefighters as well as police officers. *Michigan v. Tyler*, 436 U.S. 499, 506, 98 S.Ct. 1942, 1948, 56 L.Ed.2d 486 (1978); *State v. O'Keefe*, 143 Idaho 278, 283, 141 P.3d 1147, 1152 (Ct. App. 2006). Warrantless searches are presumptively unreasonable. *State v. Anderson*, 140 Idaho 484, 486, 95 P.3d 635, 637 (2004). The burden of proof is on the state to show that the search either fell within one of the well-recognized exceptions to the warrant requirement or was otherwise reasonable under the circumstances. *Id*. Among the recognized exceptions to the warrant requirement is the exigent circumstances

exception. *State v. Holton*, 132 Idaho 501, 504, 975 P.2d 789, 792 (1999). The exception applies where the facts known at the time of the entry indicate a "compelling need for official action and no time to secure a warrant." *Tyler*, 436 U.S. at 509, 98 S.Ct. at 1949.

## A. Initial entry by Blubaum

Blubaum's entry was justified by the exigencies of the situation. According to the United States Supreme Court, a burning building presents an exigency of sufficient proportions to render a warrantless entry reasonable. *Tyler*, 436 U.S. at 509, 98 S.Ct. at 1950. Even after the fire is out, a prompt determination of its origin may be necessary to prevent its recurrence. *Id.* at 510, 98 S.Ct. at 1950. Firefighters may enter a building without a warrant to fight a blaze and, after extinguishing it, may remain for a reasonable time to investigate its cause. *Id.*

The exigency in this case was a threat of fire rather than an actual fire, but the principle is the same. *See O'Keefe*, 143 Idaho at 285, 141 P.3d at 1154 (finding that there may be a need for immediate investigation to detect continuing dangers). Both Blubaum and Watson testified that the couch fire could have extended into the structure without necessarily being visible. The burn marks in the stairway carpet corroborated their testimony. According to Blubaum, smoldering can occur in walls or floors or under carpets for hours or days after something else has been on fire in an apartment. Although Blubaum saw no flames or smoke, the facts known to him indicated there was an appreciable, immediate risk of fire within the building. The presence of multiple tenants in the building compounded the urgency. *See Michigan v. Clifford*, 464 U.S. 287, 297 n.8, 104 S.Ct. 641, 649 n.8, 78 L.Ed.2d 477 (1984); *Tyler*, 436 U.S. at 510 n.6, 98 S.Ct. at 1950 n.6. So long as the claim of exigency is not a pretext, courts avoid second-guessing the decisions of officials who reasonably believe they are confronting an urgent situation. *State v. Monroe*, 101 Idaho 251, 255, 611 P.2d 1036, 1040 (1980), *vacated on other grounds*, 451 U.S. 1014, 101 S.Ct. 3001, 69 L.Ed.2d 385 (1981);[1] *O'Keefe*, 143 Idaho at 283, 141 P.3d at 1152. Blubaum did not enter on pretext. His purpose was to ensure that the fire was out and determine its cause. This function serves a compelling public interest. *See Clifford*, 464 U.S. at 293, 104 S.Ct. at 647. The circumstances confronting Blubaum—a recently-doused couch in the driveway, a trail of soot and burn marks, an absent tenant, bystanders' lack of knowledge about

---

[1] On remand the Court vacated Monroe's conviction on other grounds. *State v. Monroe*, 103 Idaho 129, 645 P.2d 363 (1982); *see State v. Sailas*, 129 Idaho 432, 435 n.2, 925 P.2d 1131, 1134 n.2, (Ct. App. 1996).

how the fire started, multiple tenants in the building, and a landlord's request to investigate, combined with his own knowledge about how fire can persist and spread—were sufficiently exigent to render his entry objectively reasonable.[2]  In *Tyler*, the United States Supreme Court rejected the view that "the exigency justifying a warrantless entry ends, and the need to get a warrant begins, with the dousing of the last flame."  436 U.S. at 509-510, 98 S.Ct. at 1950.[3]

Smith argues that the holding of *Tyler* that a firefighter may remain in a building to investigate the cause of a fire after entering to extinguish it does not apply because Blubaum entered after the fire had been extinguished.  The distinction does not aid Smith.  The fact that the fire was extinguished by someone other than the firefighter indicates a need to investigate to ensure that it will not rekindle.  This is especially so when the tenant who attempted to extinguish the fire was absent and the fire appeared to have persisted in his absence.

**B.  Investigative entry by Watson and Cox**

According to Smith, even if Blubaum's entry was reasonable, any further entry was illegal because Blubaum had already determined the fire was out.  The district court agreed, holding that the subsequent entry by Chief Watson and Officer Cox was illegal because any exigency dissipated when Blubaum left the apartment.

A warrantless search may not exceed the scope of the exigency that justified its initiation. *See Mincey v. Arizona*, 437 U.S. 385, 393, 98 S.Ct. 2408, 2413-14, 57 L.Ed.2d 290 (1978); *State v. Buterbaugh*, 138 Idaho 96, 99, 57 P.3d 807, 810 (Ct. App. 2002).  Once the exigency has ceased additional entries generally require a warrant.  *See Tyler*, 436 U.S. at 511-12, 98 S.Ct. at 1951.  The aftermath of a fire often presents exigencies even though the fire is extinguished. *Clifford*, 464 U.S. at 293, 104 S.Ct. at 647.  Prompt determination of the cause and origin of a fire serves a compelling public interest.  *Id*.  Consequently, the Fourth Amendment not only permits warrantless entries for the purpose of fighting a fire but also allows fire officials to remain for a reasonable time to determine the cause of the fire in order to prevent its recurrence.

---

[2] Although a landlord cannot consent to a search of a tenant's home, *State v. Brauch*, 133 Idaho 215, 219, 984 P.2d 703, 707 (1999), a landlord's concerns may be relevant in assessing the urgency of a situation.

[3] The district court found that the couch was neither smoldering nor smoking when Blubaum arrived.  The state argues that this finding is clearly erroneous because of Blubaum's testimony that he saw smoke rising from the corner of the couch was uncontradicted.  This finding does not affect the outcome.  There is no need to decide the issue.

*Tyler*, 436 U.S. at 510, 98 S.Ct. at 1950. If something caused a fire once, it may cause it again if the cause is not determined and remedied.

Fire officials may come and go in the course of responding to a single incident. *See Clifford*, 464 U.S. at 293 n.3, 104 S.Ct. at 646 n.3. Such reentries are permissible even after the fire is out so long as they are an "actual continuation" of the initial entry and not "clearly detached" from the exigency. *See Tyler*, 436 U.S. at 511, 98 S.Ct. at 1951. This determination is largely factual because the circumstances of particular fires vary widely. *Id*. at 510 n.6, 98 S.Ct. at 1950 n.6. Nevertheless, the United States Supreme Court has provided guidance in *Michigan v. Tyler* and *Michigan v. Clifford*, both of which involved the application of this rule to particular facts.

In *Tyler*, fire crews responding to a fire in the middle of the night found evidence of arson. A police detective arrived as the fire was being extinguished but had to discontinue his investigation at 4:00 a.m. because it was too dark to see through the smoke and steam. 436 U.S. at 511, 98 S.Ct. at 1951. The detective and the fire chief returned about four hours later to continue their investigation in the daylight. *Id*. The Supreme Court found the later entry a continuation of the earlier entry and therefore permissible. *Id*. Subsequent entries several days later, however, were ruled unconstitutional because they were detached from the initial exigency and warrantless entry. *Id*.

*Clifford*, decided by a plurality several years after *Tyler*, involved similar circumstances. An arson investigator made a warrantless entry six hours after an early morning fire was extinguished. 464 U.S. at 290, 104 S.Ct. at 645. In contrast to *Tyler*, however, there was no investigation to be continued. The fire had been extinguished and firefighters left the scene hours before the arson investigator first arrived. *Id*. The delay was attributable to the arson investigator's schedule rather than conditions caused by the exigency. *Id*. By the time the investigator arrived, the owner had already engaged work crews to begin securing the house. *Id*. The Court found that these facts separated the subsequent investigation from the initial exigency, and a warrant or other authorization was required. *Id*. at 296-97, 104 S.Ct. at 648.

It is clear that Watson was continuing Blubaum's initial investigation. Once Blubaum was lawfully inside the apartment, he was permitted to remain there for a reasonable time, not only to ensure that the fire was out, but to investigate its cause. The fact that Watson replaced Blubaum during the process is of no constitutional significance. A superior officer's decision to

6

take over the investigation does not "clearly detach" the remainder of the investigation from the subordinate's initial inspection. Likewise, the fact that Blubaum met Watson outside rather than waiting for Watson to join him in the apartment is immaterial. Blubaum left the apartment because he saw through the window that Watson had arrived, not because he had concluded a full investigation. The entries were only minutes apart. The only purpose served by requiring Blubaum to remain inside the apartment would be to remove any doubt about the legality of Watson's later entry. Watson's presence in the apartment was a continuation of Blubaum's initial entry. Watson was lawfully present in the apartment.

Smith has not raised any argument that a police officer cannot accompany a firefighter responding to a fire. *Cf. State v. Bower*, 135 Idaho 554, 560, 21 P.3d 491, 497 (Ct. App. 2001) (holding that police may "follow in the footsteps of firefighters" responding to an emergency). Although Smith characterizes Cox's entry as "opportunistic," there is nothing in the record to suggest that Officer Cox entered the apartment on pretext. Watson asked Cox to accompany him, and Cox had no reason to suspect the presence of contraband until after he entered.

Neither Cox nor Watson acted outside the scope of the justification for the entry. Watson confined his search specifically to the area where the couch had been. Cox remained in the vicinity of the front door. The pipe and seeds were in plain view. *See State v. Christensen*, 131 Idaho 143, 146, 953 P.2d 583, 586 (1998) (citing *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)). Smith argues that Cox exceeded the scope of the exigency when he picked up the pipe to smell it, relying on *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1978), which holds that items in plain view may not be moved for closer examination without probable cause. *Hicks* is inapplicable because the incriminating character of the pipe and seeds was "immediately apparent." *Horton*, 496 U.S. at 136-37, 110 S.Ct. at 2308. Because Watson and Cox were lawfully present in the apartment, their knowledge of the presence of marijuana was not illegally obtained.

## IV.
## THERE IS VALID CONSENT

Consent is an exception to the warrant requirement. *State v. Hansen*, 138 Idaho 791, 796, 69 P.3d 1052, 1057 (2003). Whether consent was voluntary, as opposed to being a product of coercion, is a question of fact to be determined in light of all the surrounding circumstances. *Id*.

The district court found that Smith's consent to search was involuntary because the police told him they would get a search warrant if he did not consent. According to the district court, Smith was presented with a "Hobson's choice," which is to say, no real choice at all, because the apartment would ultimately be searched whether or not he consented.[4]

The district court erred by basing its decision on Smith's inability to avoid a search of his apartment. "Under the Fourth Amendment, a person is assured 'not that no government search of his house will occur unless he consents; but that no such search will occur that is unreasonable.'" *State v. Brauch*, 133 Idaho 215, 220, 984 P.2d 703, 708 (1999) (quoting *Illinois v. Rodriguez*, 497 U.S. 177, 183, 110 S.Ct. 2793, 2799, 111 L.Ed.2d 148, 158 (1990)). The question is not whether Smith wanted to have his home searched, but whether he voluntarily consented to it. Smith would have preferred that no search take place, but as a practical matter that choice was not before him. He was deprived of that choice, not by police misconduct, but by the existence of probable cause to search his apartment. His options were to allow a warrantless search or insist on a warrant. While Smith did not like the choices, that does not mean he was coerced. *State v. Garcia*, 143 Idaho 774, 779, 152 P.3d 645, 650 (Ct. App. 2006).

A representation by police that they presently have a warrant renders consent involuntary because acquiescence to a claim of lawful authority is not voluntary consent. *Bumper v. North Carolina*, 391 U.S. 543, 547-49, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). Smith, however, was not told that the police had a warrant, but that they would obtain one if he did not consent. *See State v. Kilby*, 130 Idaho 747, 750, 947 P.2d 420, 423 (Ct. App. 1997) (distinguishing *Bumper*).

Likewise, a false or erroneous representation by police regarding the right to obtain a warrant weighs against a finding of voluntariness. *See State v. Fee*, 135 Idaho 857, 863, 26 P.3d 40, 46 (Ct. App. 2001); *State v. Abeyta*, 131 Idaho 704, 708-09, 963 P.2d 387, 391-92 (Ct. App. 1998). "Baseless threats to obtain a search warrant may render consent involuntary." *United States v. White*, 979 F.2d 539, 542 (7th Cir. 1992). Here, however, Cox's discovery of the pipe and seeds afforded probable cause for a search warrant. He was not misleading Smith, but merely explaining the options. *See Fee*, 135 Idaho at 863, 26 P.3d at 46.

---

[4] A "Hobson's choice" is defined as "an apparent freedom to take or reject something offered when in fact no such freedom exists; an apparent freedom of choice when there is no real alternative." Webster's Third New International Dictionary, Unabridged 1076 (1993).

8

A threat to take unlawful or improper action cuts against voluntariness, but no such threat was made. Had Smith refused to allow the search, it would have been proper for the police to secure the premises while awaiting a warrant. *State v. Fees*, 140 Idaho 81, 86-87, 90 P.3d 306, 311-12 (2004) (discussing *Illinois v. McArthur*, 531 U.S. 326, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001)). There were sufficient facts known to obtain a search warrant.

Ultimately, "the well founded advice of a law enforcement agent that, absent a consent to search, a warrant can be obtained does not constitute coercion." *United States v. Faruolo*, 506 F.2d 490, 495 (2d Cir. 1974).

## V.
## CONCLUSION

The initial warrantless entry by Blubaum was justified by exigent circumstances. The subsequent entry by Watson and Cox was a continuation of that entry. Cox's knowledge of the marijuana was not illegally obtained. Smith gave a valid consent to search the apartment. The decision of the district court suppressing the evidence is reversed.

Justices TROUT, EISMANN, BURDICK and JONES **CONCUR**.