**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 46229**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | **Boise, August 2019 Term** |
| **v.** | ) | |
| | ) | **Filed: October 7, 2019** |
| **COLETON MYERS SESSIONS,** | ) | |
| | ) | **Karel A. Lehrman, Clerk** |
| **Defendant-Respondent.** | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Elmore County. Nancy A. Baskin, District Judge.

The order of the district court is <u>affirmed</u>.

Lawrence G. Wasden, Idaho Attorney General, Boise, for appellant State of Idaho. Kenneth K. Jorgensen argued.

Eric D. Fredericksen, State Appellate Public Defender, Boise, for respondent Coleton Myers Sessions. Maya P. Waldron argued.

———————————————

STEGNER, Justice.

Upon the apparent belief that Coleton Sessions was selling tainted marijuana that had caused adverse medical symptoms to its users, police officers arrived at and entered Sessions' house, and seized illegal substances and paraphernalia. Sessions was arrested and charged with multiple criminal offenses. He moved to suppress the evidence seized by the officers because it was procured without a warrant in violation of his constitutional rights. Based on the information that the officers had at the time they entered the home, the district court determined it was not reasonable for officers to believe that anyone inside the home was in need of immediate medical assistance and granted Sessions' motion to suppress. The State appeals, arguing that the warrantless entry and search were justified because of exigent circumstances. Because the district court's conclusions are supported by substantial and competent evidence, we affirm the district court's order granting the motion to suppress.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On August 19, 2016, at approximately 10:00 p.m., Patrol Sergeant Scott Smith of the Mountain Home Police Department responded to an emergency call to find Steven Miller lying

on a lawn. Smith observed that Miller could talk and move his head, but was unable to move the rest of his body. Miller told Smith that he had recently consumed some alcohol and marijuana. Smith believed the cause of Miller's paralysis was tainted marijuana. When Smith asked where Miller obtained the marijuana, he said he bought it from Sessions.

An ambulance arrived and transported Miller and Smith to St. Luke's Elmore Medical Center. Smith began to ask other officers, including Detective Kent Ogaard and Officer Hurly, whether there had been other reports similar to Miller's. Ogaard testified that he was informed that a couple of people had ended up at the hospital.[1]

Around midnight, Smith, Ogaard, and Hurly drove to Sessions' residence, the location where Miller said he had purchased the marijuana. The officers never attempted to obtain a warrant to search Sessions' home. Smith and Hurly were in police uniforms; Ogaard was in plain clothes. Ogaard knocked on the door. A woman answered the knock. After the woman opened the door, officers testified that they detected a strong odor of marijuana.[2]

The officers testified that this was not a normal marijuana investigation, due to reports that a few people in the community had possibly been affected by tainted drugs. Officers testified that they were operating under the belief that Sessions was selling tainted marijuana that could harm the user. After officers detected the odor of marijuana, they believed it possible that someone in the house might have consumed the marijuana and therefore needed help. The officers entered the home without obtaining permission or a search warrant. The woman who answered the door did not consent to the officers entering the home.

Upon entering the home, the officers noticed drug paraphernalia in the living room. Ogaard's questioning of the woman led him to believe that weapons might be inside the home. However, there was no evidence that the officers conducted a protective sweep to see if anyone was in medical distress. Nevertheless, the officers testified that had they not been concerned for the physical safety of the inhabitants, they would not have entered the home.

Ogaard asked the woman if the homeowner, Sessions, was available. Sessions came from down a hallway and spoke with the officers. Only after the conversation with Sessions did the

---

[1] Ogaard testified that a "credible law enforcement source" had informed him that within a two-week period others had exhibited similar signs of temporary paralysis such as Miller's. However, nothing connected Sessions to this evidence.

[2] Smith testified that the odor was "overwhelmingly fresh marijuana," while Ogaard said that he smelled "burning, burnt or raw marijuana." When pressed, he testified he could smell "all three."

officers search the residence. The officers located marijuana. No one at the home was found to be in any medical distress.

The State charged Sessions with manufacturing marijuana, delivery of marijuana, and possession of drug paraphernalia. Sessions moved to suppress the evidence based on the officers' warrantless entry into his home. The State responded to the motion to suppress, acknowledging that the officers entered Sessions' home without a warrant, but arguing that the warrantless entry was justified by exigent circumstances. The district court granted Sessions' motion to suppress because exigent circumstances did not exist, and there was no evidence that anyone at the residence was in medical distress. The State brought a timely appeal.

## II. STANDARD OF REVIEW

"In reviewing a district court order granting or denying a motion to suppress evidence, the standard of review is bifurcated." *State v. Draper*, 151 Idaho 576, 592, 261 P.3d 853, 869 (2011) (citing *State v. Watts*, 142 Idaho 230, 232, 127 P.3d 133, 135 (2005)). "This Court will accept the trial court's findings of fact unless they are clearly erroneous." *Id.* (citing *State v. Diaz*, 144 Idaho 300, 302, 160 P.3d 739, 741 (2007)). "However, this Court freely reviews the trial court's application of constitutional principles in light of the facts found." *Id.* (citation omitted).

## III. ANALYSIS

### A. The district court did not err in determining that exigent circumstances did not exist to justify the warrantless entry into Sessions' home.

The district court granted Sessions' motion to suppress the evidence obtained during the search of his home because the officers had no evidence to cause the officers to reasonably believe anyone inside the home was suffering from any imminent medical distress. The State argues that the district court only applied part of the exigent circumstances test. In addition to preventing harm that has already occurred, the State contends that the exigent circumstances exception also extends to preventing any future harm. Sessions responds that the district court correctly determined that exigent circumstances did not exist. Further, Sessions argues that the district court properly considered the possibility of future harm but concluded that it did not justify the warrantless entry.

The Fourth Amendment provides, "[t]he right of the people to be secure in their . . . houses . . . shall not be violated[.]" U.S. Const. amend IV; *see also* Idaho Const. art. I, §

3

17. Warrantless searches and seizures within a home are presumptively unreasonable. *Kentucky v. King*, 563 U.S. 452, 459 (2011) (citing *Brigham City v. Stuart,* 547 U.S. 398, 403 (2006)); *accord State v. Smith*, 144 Idaho 482, 485, 163 P.3d 1194, 1197 (2007). The State may overcome this presumption by proving one of the exceptions to the warrant requirement. *Id*. One such exception is exigent circumstances. *Brigham City,* 547 U.S. at 403. "[W]arrants are generally required to search a person's home . . . unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Id.* (alteration in original) (quoting *Mincey v. Arizona*, 437 U.S. 385, 393–394 (1978)).

One exigent circumstance is to provide emergency aid: "[L]aw enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Id.* (citations omitted). "[T]he police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches[.]" *Welsh v. Wisconsin*, 466 U.S. 740, 749–50 (1984). Thus, this Court must consider whether the district court correctly concluded there was no compelling need for official action in this case.

There is only minimal case law in Idaho applying the emergency aid exception. However, Idaho's Court of Appeals has had several occasions to consider this issue, and we therefore look to our appellate court for its handling of similar cases. The Court of Appeals has held that "unconsciousness or unresponsiveness, along with factors tending to indicate distress, may amount to exigent circumstances." *State v. Heard*, 158 Idaho 667, 669, 350 P.3d 1044, 1046 (Ct. App. 2015); *see also State v. Bower*, 135 Idaho 554, 559, 21 P.3d 491, 496 (Ct. App. 2001). For example, in *Heard*, the Court of Appeals held that exigent circumstances existed when the officer observed an unresponsive woman inside a hotel room, and the officer had knowledge that she had been arguing with a man loudly just five minutes before. *Heard*, 158 Idaho at 669–70, 350 P.3d at 1046–47.

Likewise, an unexplained medical emergency may give rise to a finding of exigent circumstances. *State v. Barrett*, 138 Idaho 290, 292, 62 P.3d 214, 216 (Ct. App. 2003). In *Barrett*, officers responded to a 911 call from a neighbor who reported that Barrett had collapsed on the neighbor's porch. *Id*. When officers arrived, Barrett was unable to stand, hear, or communicate with the officers. *Id.* The officers noticed that Barrett's door was open and the neighbor stated that he had not seen Barrett's wife or children all day. *Id.* The officer shouted

4

into the house and asked anyone inside to come forward. *Id.* After receiving no response, the officer entered the home to determine if there was anyone inside who needed medical assistance. *Id.* Once inside, the officer found illegal substances. *Id.* The Court of Appeals held that the entry was justified by exigent circumstances, noting that the unexplained medical emergency, coupled with the officer's inability to contact anyone inside the home, suggested a reasonable possibility that the other occupants of the home were in medical distress. *Id.* at 294–95, 62 P.3d at 218–19.

In contrast, exigent circumstances do not exist when there is no obvious sign of distress and there are less intrusive means to determine whether there is an immediate need to enter the home. *State v. Reynolds*, 146 Idaho 466, 471, 197 P.3d 327, 332 (Ct. App. 2008). For example, in *Reynolds*, police were called to Reynolds' home to investigate a report that Reynolds' wife was being held against her will. *Id.* at 468, 197 P.3d at 329. Once officers arrived, the couple was separated and officers could clearly see the woman was not in distress. *Id.* at 468–69, 197 P.3d at 329–30. The Court of Appeals stated, "[t]here was no exigency that would justify entry into the house without first knocking or calling out to bring any occupant to the door where she could be interviewed and the situation assessed." *Id.* at 471, 197 P.3d at 332. The court reasoned,

> there was no attempt by police officers to contact the alleged victim through non-intrusive means such as knocking or calling out for her, and the surrounding circumstances did not suggest an *immediate* danger that would justify dispensing with an effort to bring someone to the door to be interviewed. Had the latter action been taken, the officers' interview of Melissa could have either supported or dispelled the report that she was being held against her will. If the results of that interview left officers concerned that there could still be an individual in danger inside the house, and if permission to search could not be obtained from Reynolds or Melissa, perhaps a warrantless entry would have been justified. But in the circumstances as they are presented to us, there was no appearance of an immediate risk of harm sufficient to excuse the officers from the normal procedure of knocking or calling out to bring someone to the doorway for questioning. The circumstances here did not support a reasonable belief that immediate entry into the home was necessary.

*Id.* (italics in original).

The facts of this case are more aligned with the facts in *Reynolds*, in which no exigency was found. First, like *Reynolds*, there was no obvious sign of distress from any of the occupants inside the home. The woman who appeared at the door did not appear to be in any distress, nor did she appear to be injured. Second, there were other options available to the officers to determine whether immediate assistance was necessary. As the appellate court has suggested, the officers could have interviewed the occupants of the home, such as the woman who answered the

5

door, to determine whether any occupant inside the home required any immediate medical assistance.

In addition, the facts of this case are unlike the facts in *Barrett* or *Heard*, in which exigent circumstances were found. In both of those cases, the officers had knowledge of an unresponsive or unconscious person in or near the home coupled with other facts causing the officers to believe that immediate assistance was required. Here, no evidence existed that anyone inside the home was suffering from any medical distress or would suffer from any imminent harm. The facts of this case are also unlike the circumstances in *Barrett*, in which the officers entered the home after finding the resident of the home outside suffering from an unknown medical condition, and where no one inside the home responded to calls from the police. Here, a woman answered the door and gave officers an opportunity to investigate any potential need for medical assistance without entering the home.

Here, the officers had little evidence that would cause a reasonable officer to believe it necessary to enter the home to render emergency assistance to an injured occupant or to protect an occupant from imminent injury. The only facts the officers had knowledge of when they arrived at Sessions' home were that a few individuals had possibly been treated for unusual symptoms, and that Miller had allegedly purchased potentially tainted marijuana from Sessions. However, there was no evidence that anyone at or inside Sessions' home was suffering any medical distress or any imminent threat that something similar was likely to occur.[3]

The State contends that the officers had reason to believe that Sessions had marijuana (due to the odor of marijuana), that the marijuana was tainted, and that the tainted marijuana was causing adverse medical symptoms, including paralysis. Accordingly, the State maintains that officers were justified in entering the home to seize the dangerous substance and prevent future injury to anyone who might use the tainted marijuana. However, the district court rejected this argument, stating, "[t]he belief that there was anyone in immediate and imminent harm after the

---

[3] While apparently not addressed by the district court, Ogaard testified that one of the reasons he did not seek a warrant is because of the time it would have taken to obtain one. He testified it routinely took two to three hours to obtain a search warrant. In this case, the police encountered Miller at approximately 10:00 p.m. Miller almost immediately upon interacting with Smith told the officer he had smoked marijuana that he had purchased from Sessions. Yet, the police did not show up at Sessions' home until midnight. If the police had diligently pursued a warrant, one could have potentially been obtained within the time it took between encountering Miller and appearing at Sessions' door (assuming a disinterested magistrate would have issued a warrant on these facts). "The exigent circumstances exception does not apply where there is time to secure a warrant." *State v. Robinson*, 144 Idaho 496, 501, 163 P.3d 1208, 1213 (Ct. App. 2007) (citing *Michigan v. Tyler*, 436 U.S. 499, 509 (1978); *State v. Worthington*, 138 Idaho 470, 472, 65 P.3d 211, 213 (Ct. App. 2002)).

officers arrived, observed, and questioned the woman who answered the door, was not objectively reasonable." The district court continued:

> The officers' response after only smelling marijuana was not appropriately tailored to the scope of the alleged exigency. There were other lawful options available to the officers after they determined they had probable cause for a search warrant for marijuana (based on the odor they smelled from the door), but lacked any facts supporting an emergency situation actually existed.

There is also no evidence that upon crossing the threshold and gaining entry into the home, the officers conducted a sweep of the home to see if anyone was in distress. If the justification for entering the home was protection of its occupants, there was no evidence to support such a rationale. Therefore, the district court considered, and rejected, the claim that there were facts that would have led officers to reasonably believe that there was need for immediate action to prevent future harm.

Similarly, the district court found that there were other options available to the officers that could have mitigated any potential harm without violating Sessions' constitutional rights. As the Court of Appeals reasoned in *Reynolds*, the officers could have questioned the woman who answered the door whether anyone was suffering from medical distress. *See* 146 Idaho at 471, 197 P.3d at 332. The officers could have questioned the woman about the occupants in the house or asked all of the occupants to come to the door to further assess the situation. Accordingly, there was no "*compelling* need for official action." *See Smith*, 144 Idaho at 486, 163 P.3d at 1198 (italics added). The State has a heavy burden under these facts to justify entry into a person's home without a warrant. The State did not meet its burden. Therefore, the district court did not err in suppressing the evidence seized when the officers entered Sessions' home without a warrant.

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's order granting Sessions' motion to suppress.

Chief Justice BURDICK, Justices BRODY, BEVAN and MOELLER CONCUR.