# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 50127-2022

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, October 2024 Term |
| | ) | |
| v. | ) | Opinion filed: January 8, 2025 |
| | ) | |
| DANIEL RUIZ ORTIZ, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Elmore County. Jonathan Medema, District Judge.

The decision of the district court is <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender, Boise, for Appellant. Andrea W. Reynolds argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent. Kenneth K. Jorgensen argued.

_____

ZAHN, Justice.

Daniel Ruiz Ortiz appeals from his convictions for second-degree murder and a violation of a no contact order, alleging that the district court erred when it denied his motion to suppress evidence discovered during a warrantless search of his home and during a subsequent search conducted pursuant to a search warrant. In denying Ortiz's motion, the district court relied on this Court's decision in *State v. Rebo*, 168 Idaho 234, 482 P.3d 569 (2020), to hold that Ortiz lacked Fourth Amendment standing to challenge the warrantless search of his home because, at the time the search was conducted, Ortiz was the subject of a no contact order that prohibited him from being within 300 feet of the residence.

Ortiz argues that we should overrule *Rebo* and hold that a person prohibited from entering his or her home pursuant to a no contact order still has Fourth Amendment standing to challenge law enforcement's warrantless entry into the home. He asserts that, under both a property-based

1

and a privacy-based understanding of the Fourth Amendment, a citizen maintains standing to challenge law enforcement's warrantless entry into his home despite the existence of a no contact order prohibiting him from entering the home. Alternatively, Ortiz argues that his case is distinguishable from *Rebo*. For the reasons discussed below, we decline to overrule *Rebo* and affirm the district court's decision.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On April 27, 2020, Samantha Ruiz obtained a no contact order ("NCO") against Ortiz. Ruiz was married to Ortiz and had three children with him. The NCO was issued based on allegations that Ortiz had committed domestic violence against Ruiz, and it prohibited Ortiz from being within 300 feet of the residence that he had shared with Ruiz and the children. The NCO provided that "[Ortiz] may contact a law enforcement officer who may make arrangements to accompany [Ortiz] to the residence to remove items and tools necessary for employment and personal belongings. The officer may determine what constitutes necessary personal belongings."

According to testimony at a hearing on a motion to suppress evidence obtained during a warrantless search of Ortiz's home, three months after the no contact order was issued, the Mountain Home Police Department received a report of concern for Ruiz's safety because she had not been seen or heard from in two days. Officers went to the home Ruiz and Ortiz shared and were met by some concerned family and friends outside the house, including Ortiz's brother, who had gone to the house to try to contact Ruiz or Ortiz. Officers entered the residence without a warrant to perform a welfare check and did an initial "clear" of the house to see if there was anybody in distress or anyone present who should not be there. After clearing the house without finding Ruiz, officers walked through the home with Ortiz's brother, who noticed that there were children's shoes, clothes, and other personal belongings missing from the home. Officers, not finding anyone in obvious distress, then left the residence.

After leaving the residence, law enforcement obtained new information, including that Ortiz had called a family member, stating that he was in Pine, Idaho with the children and Ruiz was at home. However, cellphone pings indicated that Ortiz's, Ruiz's, and one of the children's phones were all in New Mexico. After learning this new information, law enforcement decided to go back to the house to search for Ruiz and further investigate. Without obtaining a warrant, law enforcement reentered the house with Ortiz's brother so he could provide further insight into anything in the house that seemed out of the ordinary. While there, a detective discovered Ruiz's

body in a closet. Law enforcement exited the building and obtained a search warrant before conducting a further search of the home.

In October 2020, the State filed an Information against Ortiz accusing him of the crimes of second-degree murder, destruction of evidence, and violation of an NCO. Ortiz filed a motion to suppress evidence discovered in the home as a result of the second warrantless search and the subsequent search pursuant to a search warrant. Ortiz argued that the second search of the home was conducted without a warrant and there were no exigent circumstances justifying the search. Ortiz claimed that probable cause for the subsequently issued search warrant was based on evidence obtained during the allegedly illegal second search and therefore should be suppressed pursuant to the exclusionary rule.

The State opposed the motion. It first argued that Ortiz did not have Fourth Amendment standing to challenge the warrantless search because he was prohibited by court order from being within 300 feet of the house and because he abandoned the residence. The term "Fourth Amendment standing" refers to the notion that "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *State v. Rebo*, 168 Idaho 234, 238, 482 P.3d 569, 573 (2020) (quoting *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978)). As such, to have Fourth Amendment standing, "a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search." *Byrd v. United States*, 584 U.S. 395, 410–11 (2018). For ease of reading, we will use the word "standing" when addressing the State's argument. The State also argued that, in the event Ortiz had standing to challenge the search, law enforcement was not required to obtain a warrant to search the home under the exigency exception to the warrant requirement. Alternatively, the State argued that the evidence was admissible under the inevitable discovery exception.

Following a hearing on the motion, the district court issued oral findings of fact and conclusions of law. The district court concluded that the events in Ortiz's case were indistinguishable from those in *Rebo*. In *Rebo*, this Court held that "Rebo lacked standing to challenge [the officer's] warrantless entry into the residence because he was prohibited by court order from being within three hundred feet of the residence." 168 Idaho at 242, 482 P.3d at 577. The district court denied Ortiz's motion, stating, "I am bound to follow that direction [of the Idaho Supreme Court] and their direction is when there is a valid no contact order, the person who is the

3

subject of the order loses his Fourth Amendment rights to be free from unreasonable searches in his house . . . ."

Ortiz's case proceeded to a jury trial. The jury found Ortiz guilty of second degree murder and violation of an NCO. Ortiz was sentenced to a unified sentence of life in prison, with the first thirty years fixed. Ortiz timely appealed.

## II.    ISSUE ON APPEAL

Whether the trial court erred by denying Ortiz's motion to suppress.

## III.    STANDARD OF REVIEW

The standard of review for the denial of a motion to suppress is bifurcated. *State v. Lancaster*, 171 Idaho 236, 240, 519 P.3d 1176, 1180 (2022) (citing *State v. Clarke*, 165 Idaho 393, 396, 446 P.3d 451, 454 (2019)). "This Court will defer to the trial court's factual findings unless clearly erroneous. However, free review is exercised over a trial court's determination as to whether constitutional requirements have been satisfied in light of the facts found." *State v. Karst*, 170 Idaho 219, 222, 509 P.3d 1148, 1151 (2022) (alteration omitted) (quoting *State v. Samuel*, 165 Idaho 746, 755, 452 P.3d 768, 777 (2019)). "Findings of fact are not clearly erroneous if they are supported by substantial and competent evidence." *Lancaster*, 171 Idaho at 240, 519 P.3d at 1180 (quoting *State v. Bishop*, 146 Idaho 804, 810, 203 P.3d 1203, 1209 (2009)).

## IV.    DISCUSSION

On appeal, Ortiz advances two alternative arguments to support his contention that he has standing to challenge two law enforcement searches of his home, despite the fact that a no contact order mandated that he stay away from the home. First, Ortiz asserts that this Court should overrule our decision in *Rebo*. Alternatively, if we do not overrule *Rebo*, Ortiz asserts that his case is distinguishable from *Rebo*. For the reasons discussed below, we decline to overrule *Rebo*. Further, while we agree that the facts of this case are distinguishable from those in *Rebo*, we conclude that Ortiz lacks standing to challenge the warrantless search of the home.

**A. We decline to overrule our precedent in *Rebo* because Ortiz has failed to establish it is manifestly wrong.**

We begin by revisiting our decision in *Rebo*. In that case, Rebo was arrested for and pleaded guilty to domestic assault against his wife. *State v. Rebo*, 168 Idaho 234, 236, 482 P.3d 569, 571 (2020). The court issued an NCO against Rebo, which identified his wife as the protected person and prohibited him from being within 300 feet of their shared residence. *Id*. Roughly a week after the issuance of the NCO, a law enforcement officer observed Rebo behind the residence. *Id*. After

4

confirming the NCO was still in place, the officer approached Rebo. *Id.* at 236–37, 482 P.3d at 571–72. Rebo fled into the residence and the officer followed him inside, where she arrested him for violating the NCO. *Id.* at 237, 482 P.3d at 572. When Rebo was later searched at the jail, methamphetamine was discovered in his possession. *Id.* Rebo moved to suppress the methamphetamine, arguing that the officer violated his Fourth Amendment rights by entering his residence without a warrant. *Id.* The district court denied his motion and Rebo appealed. *Id.*

On appeal, this Court determined that Rebo did not have standing to challenge the warrantless entry into his residence because Rebo was prohibited, by court order, from being within 300 feet of the residence. *Id.* at 242, 482 P.3d at 577. We began by noting that the Fourth Amendment historically focused on government intrusion into constitutionally protected areas. *Id.* at 238, 482 P.3d at 573 (quoting *Carpenter v. United States*, 585 U.S. 296, 304 (2018)). However, we recognized that, as Fourth Amendment jurisprudence evolved, the Fourth Amendment's protections extended beyond property rights and included protections for expectations of privacy that society is willing to recognize as reasonable. *Id.* (relying on *State v. Maxim*, 165 Idaho 901, 904–05, 454 P.3d 543, 546–47 (2019); *Soldal v. Cook County*, 506 U.S. 56, 64 (1992); and *Katz v. United States*, 389 U.S. 347, 351 (1967)). Based on this authority, the Court analyzed Rebo's Fourth Amendment standing under both the privacy- and property-based theories underlying the Fourth Amendment's prohibition against unreasonable searches. *Id.* at 239, 482 P.3d at 574.

Under the privacy-based approach, we determined that Rebo did not have a reasonable expectation of privacy in the residence at the time of his arrest. *Id.* at 239–40, 482 P.3d at 574–75. We noted that, "where a defendant is wrongfully present at the scene of a search, that defendant is unable to object to the legality of the search." *Id.* at 239, 482 P.3d at 574 (citing *Byrd v. United States*, 584 U.S. 395, 409 (2018)). Further, "[j]ust by being in or near the home, Rebo was violating a court order designed at its core to keep him away from the residence[,]" so he was wrongfully present and lacked a reasonable expectation of privacy. *Id.* at 240, 482 P.3d at 575.

We then analyzed the property-based theory and determined that because Rebo did not have the right to exclude the officer from his home, he did not have standing to assert that the officer trespassed into the residence. *Id.* We described Rebo's property rights using "[a] common idiom describ[ing] property as a bundle of sticks—a collection of individual rights which, in certain combinations, constitute property." *Id.* at 240–41, 482 P.2d 575–76 (quoting *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 825 (2019) (Sotomayor, J., dissenting)). "[T]he no

5

contact order did not remove Rebo's bundle, it merely removed some of his sticks." *Id*. at 241, 482 P.3d at 576. Because the no contact order made it unlawful for Rebo to be within 300 feet of the residence, "the no contact order removed Rebo's right to use and significantly diminished Rebo's right to exclude others from the residence because Rebo could not exclude his wife, those permitted to enter by his wife, or law enforcement." *Id.*

We held that, "as a matter of state law . . . Rebo lost the right to exclude *some* others from and to use his property while he was subject to a no contact order[.]" *Id.* (emphasis added). Specifically, a no contact order restricts "the right of a criminal defendant to exclude those directly associated with enforcing or investigating a no contact order or an order which precludes access to certain property[,]" and does not allow the property owner to exclude "anyone a co-owner might wish to invite into the residence." *Id.* We held that "Rebo lacked standing to challenge [the officer's] warrantless entry into the residence because he was prohibited by court order from being within three hundred feet of the residence." *Id.* at 242, 482 P.3d at 577.

Ortiz contends that the decision in *Rebo* is manifestly wrong because it is inconsistent with "the plain language of the Fourth Amendment and caselaw interpreting it[,]" and that the analysis under both the privacy- and property-based approaches to the Fourth Amendment is flawed. The State contends that Ortiz failed to cite supporting legal authority for his argument. The State also argues that the residence ceased being Ortiz's home upon issuance of the NCO, and therefore Ortiz did not have a right to exclude law enforcement from entering the residence to investigate Ruiz's wellbeing.

"[S]tare decisis provides that today's Court should stand by yesterday's decisions." *Planned Parenthood Great Nw. v. State*, 172 Idaho 321, 326, 532 P.3d 801, 806 (2022) (internal quotation marks omitted) (quoting *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 455 (2015)). As such, this Court follows "controlling precedent unless it is manifestly wrong, unless it has proven over time to be unjust or unwise, or unless overruling it is necessary to vindicate plain, obvious principles of law and remedy continued injustice." *State v. Godwin*, 164 Idaho 903, 920, 436 P.3d 1252, 1269 (2019) (alteration omitted) (quoting *State v. Dana*, 137 Idaho 6, 9, 43 P.3d 765, 768 (2002)).

It is the burden of the party seeking to overrule precedent to set forth arguments that the prior precedent should be overruled according to the standard set forth above. *See State v. Watts*, 142 Idaho 230, 232–33, 127 P.3d 133, 135–36 (2005). "Unsupported claims are not sufficient to

overcome controlled precedent." *State v. Hall*, 163 Idaho 744, 799, 419 P.3d 1042, 1097 (2018) (citing *State v. Delling*, 152 Idaho 122, 131, 267 P.3d 709, 718 (2011)). As such, Ortiz must put forth legal authority to support his assertion that *Rebo* is "manifestly wrong." *See Delling*, 152 Idaho at 131, 267 P.3d at 718 ("[W]e find that Delling failed to introduce legal authority that demonstrates the unconstitutionality of [Idaho Code section] 18-207 . . . ."). We conclude that Ortiz has failed to carry his burden in this regard.

Under the privacy-based theory of the Fourth Amendment, Ortiz argues that he had a subjective expectation of privacy in his home that citizens of Idaho would recognize as reasonable and points out the *Rebo* decision's reliance on *Rakas v. Illinois*, 439 U.S. 128, 143 n.12 (1978). In *Rakas*, the U.S. Supreme Court explained that "[a] burglar plying his trade in a summer cabin during the off season may have a thoroughly justified subjective expectation of privacy, but it is not one which the law recognizes as 'legitimate.' " 439 U.S. at 143 n.12. Ortiz argues that there is a difference between a homeowner's and a burglar's expectation of privacy in a home. He asserts that, far from being a burglar, he owned the home, and an NCO should not eliminate his privacy interest in the contents of his own home.

In *Rebo*, we cited the burglar example from *Rakas* to support the rule the Court relied upon from the U.S. Supreme Court: "[W]here a defendant is wrongfully present at the scene of a search, that defendant is unable to object to the legality of the search." *Rebo*, 168 Idaho at 239, 482 P.3d at 574 (citing *Byrd*, 584 U.S. at 409); *see id.* at 239–40, 482 P.3d at 574–75 (quoting *Rakas*, 439 U.S. at 143 n.12)). We determined that Rebo did not have a reasonable expectation of privacy in his home because, just by being present at the home, "Rebo was violating a court order designed at its core to keep him away from the residence." *Id.* at 240, 482 P.3d at 575 (citation omitted). Unlike *Rebo*, Ortiz was not present at the home during the searches he challenged. Given this difference, our reasons for citing *Rakas* do not apply here and Ortiz's criticism of our reliance on that case is not well taken.

Under the property-based approach, Ortiz first argues that an individual who is prohibited from being near his house pursuant to an NCO is still able to exclude others because the NCO does not remove his ownership interest in the house. He asserts that "[t]he prohibited person is akin to a temporarily absent homeowner, not a burglar, trespasser, or squatter." This argument is unpersuasive. Ortiz does not cite legal authority supporting the assertion that an individual subject

7

to an NCO maintains his right to exclude merely because he has an ownership interest in a residence.

Ortiz also argues that *Rebo* misconstrued Justice Kagan's concurrence in *Florida v. Jardines*, 569 U.S. 1, 12–16 (2013), which caused this Court to erroneously conclude that the property- and privacy-based approaches must produce the same result. This argument is also unconvincing. In *Rebo*, we noted that "[a]s Justice Kagan has reasoned, in the Fourth Amendment context, property concepts and privacy concepts should align." *Rebo*, 168 Idaho at 242, 482 P.3d at 577 (citing *Jardines*, 569 U.S. at 13). Our holding in *Rebo* did not rest on a conclusion that the result of both approaches must be the *same*, but rather noted that the two concepts should *align*. *Id.* Our recognition that the two approaches do not require the same result is borne out by the fact that, in *Rebo*, we analyzed the two approaches independently of each other. *See generally id*., 168 Idaho 234, 482 P.3d 569.

Finally, Ortiz argues that a person's home is the most important place the Fourth Amendment protects and, therefore, an NCO should not completely eviscerate the privacy rights associated with one's home. To be sure, "[b]oth historically and textually, a person's home is the centerpiece of the [Fourth] Amendment's constitutional protection." *Maxim*, 165 Idaho at 905, 454 P.3d at 547 (citing *Collins v. Virginia*, 584 U.S. 586, 592–93 (2018)). However, the U.S. Supreme Court has also recognized that "even a property interest in a premises may not be sufficient to establish a legitimate expectation of privacy with respect to particular items located on the premises or activity conducted thereon." *Rakas*, 439 U.S. at 143 n.12. Ortiz has failed to cite any caselaw establishing that, despite the NCO that prohibited him from being in or near the home, he retained some right to exclude law enforcement from the premises, particularly when, as we discuss in more detail below, law enforcement was there to check on the well-being of a co-owner and resident of the home.

Ortiz has failed to demonstrate that our decision in *Rebo* was manifestly wrong. Instead, Ortiz's arguments amount to an invitation for us to revisit *Rebo* with the hope that we will reach a different result. We decline to do so.

**B. While this case is distinguishable from *Rebo*, Ortiz does not have standing to challenge the warrantless search of his home.**

Ortiz next argues that, even if we decline to overrule *Rebo*, his case is distinguishable and therefore the holding from *Rebo* does not apply. Ortiz notes three factual distinctions between his case and *Rebo*. First, he asserts that the NCO in *Rebo* was issued after Rebo pleaded guilty to

misdemeanor domestic assault, while Ortiz's NCO followed a petition and hearing rather than a guilty plea. Second, Ortiz claims there is no evidence that the officers who conducted the second warrantless search of his home were aware of the NCO. Finally, Ortiz argues that in *Rebo*, Rebo himself was seized, whereas here, the evidence seized was "physical evidence of an unrelated crime." The district court determined that this case was indistinguishable from *Rebo* because Ortiz was bound by a valid NCO. While we agree with Ortiz that his case is distinguishable from *Rebo*, we are not persuaded that he has Fourth Amendment standing in this case. We begin by addressing the distinctions that Ortiz attempts to draw between this case and *Rebo*.

As to the first distinction, Ortiz argues that society would recognize his expectation of privacy in the home because his NCO did not result from a guilty plea but instead from a petition and hearing. Ortiz cites no legal authority to support this assertion. While we agree that this is a factual difference between the cases, the difference does not create a right to exclude others from the property. We determined that Rebo's property rights were limited because of the NCO that prevented him from being in or near the home, not because he was found guilty of a crime. *See Rebo*, 168 Idaho at 241, 482 P.3d at 576. Because Ortiz was also subject to an NCO, his property rights were similarly limited. *See id.* at 241–42, 483 P.3d at 576–77. As such, this factual difference does not lead to a different conclusion from that in *Rebo*.

On the second distinction, Ortiz argues that his case is distinguishable because there is no evidence that the officers who conducted the second search were aware of the NCO. Ortiz again fails to cite legal authority establishing that the factual distinction is legally significant. Ortiz has failed to explain why, if the officers were not aware of the NCO, that would give Ortiz a property interest recognized by the Fourth Amendment. Again, we determined that Rebo's property rights were limited because of the NCO, not because the officer who saw him there knew about the NCO.

Regarding the third distinction, Ortiz argues that his case is distinguishable from *Rebo* because the officer entered the residence to find Rebo, whereas the officers in this case entered the residence "to search for evidence of an unrelated crime." Ortiz notes that this was an important factor in *State v. Boyer*, 133 A.3d 262 (N.H. 2016), a case this Court relied upon when deciding *Rebo*. Ortiz is correct that in *Boyer*, the New Hampshire Supreme Court found it significant that the evidence seized was the defendant rather than tangible evidence of another crime:

> We find this factor to be significant. Had the search in this case been for evidence of a crime unrelated to the defendant's violation of the bail order, the defendant may have had a legitimate privacy interest in the items seized notwithstanding the

9

terms of the bail order. Here, however, the terms of the bail order directly impact the defendant's privacy interest in his 'mere presence' in the apartment.

*Boyer*, 133 A.3d at 268. However, this discussion was in reference to the reasonable expectation of privacy analysis. *See id.* at 266–69. Our decision in *Rebo* cited *Boyer* for its property rights analysis. *See Rebo*, 168 Idaho at 241–42, 482 P.3d at 576–77. Put simply, our decision did not rely on the analysis cited by Ortiz. The cited language from *Boyer* provides no support for Ortiz because he cannot establish that any property interest he retained in the home entitled him to prevent law enforcement from checking on the welfare of Ruiz, who had an ownership interest and a possessory interest in the home.

In sum, we agree with Ortiz that the facts of this case are distinguishable from those in *Rebo*. The holding in *Rebo* was the product of law enforcement observing the defendant in the process of violating of a no contact order and then proceeding to arrest the defendant after he was "caught in the act." *Rebo*, 168 Idaho at 241, 482 P.3d at 576. That is not what occurred here. The facts of this case are clearly distinguishable from those of *Rebo*. Despite those factual differences, and for reasons we discuss in more detail below, we conclude that Ortiz did not have Fourth Amendment standing to challenge law enforcement's search to check on Ruiz's well-being.

1. *Ortiz had a lesser property interest in the home than Ruiz because he lacked a possessory interest in the home due to the NCO.*

Property rights may arise from both ownership interests and possessory interests in the property. *Id.* at 239, 482 P.3d at 574. Due to the NCO, Ortiz had only an ownership interest in the home. Ruiz, on the other hand, had both an ownership and possessory interest. Although multiple people may have an interest in a residence, the extent of their property rights may vary depending on their individual relationship with the residence. For example, for an individual to validly consent to the search of a home, he must have "mutual use of the property," or the possessor of the property must "assume[] the risk" that the individual might permit common areas to be searched. *State v. Johnson*, 110 Idaho 516, 523, 716 P.2d 1288, 1295 (1986) (holding a landlord could not give effective consent for the search of a tenant's home) (quoting *United States v. Matlock*, 415 U.S. 164, 171 n.7 (1974)). We have applied this test to conclude that a landlord may not have authority to consent to the search of a tenant's home. *Id.* In this way, an owner's interest in the home can be inferior to that of the possessor. Here, not only was Ruiz a co-owner of the home, she also had a possessory interest. Because the NCO eliminated Ortiz's possessory interest

10

for the duration of the order, and because Ruiz retained both an ownership and a possessory interest, Ruiz's interest in the home was superior to that of Ortiz while the NCO was in place.

2. *Ortiz did not have the right to exclude law enforcement from entering the home to check on Ruiz's wellbeing.*

As previously mentioned, Ruiz was a co-owner and had a possessory interest in the home. As the party rightfully occupying the home, her interest in being safe in the home was superior to any right to exclude that Ortiz retained. *See Turner v. Commonwealth*, 531 S.E.2d 619, 622 (Va. Ct. App. 2000) (holding a man subject to a no contact order could be guilty of burglary despite his ownership interest in the house because breaking and entering combined with unlawful intent offended the wife's superior and exclusive right to habitation). As such, Ortiz was precluded from excluding individuals that Ruiz explicitly invited into the home. *Rebo*, 168 Idaho at 241, 482 P.3d at 576. Further, Ortiz was not entitled to exclude individuals who entered the house for the purpose of checking on or assisting with Ruiz's safety and wellbeing.

3. *Law enforcement properly entered the home to check on Ruiz's wellbeing.*

Ortiz argues in deciding this case, we may not rely on the officers' testimony at the suppression hearing that they entered the home for the purpose of locating Ruiz because the district court found that the second search was not justified by exigent circumstances. The State argues that the search was justified by exigent circumstances because, prior to the second warrantless search, the situation had evolved, and law enforcement had learned new information that demonstrated an urgent need to locate Ruiz and the children. We reject Ortiz's argument on this point and hold that we may rely on the officers' testimony that they entered the home a second time to check on Ruiz's wellbeing because any findings by the district court on this point were clearly erroneous.

The district court, after concluding that Ortiz did not have Fourth Amendment standing to challenge the warrantless search of the home, stated "I am not persuaded that there was an exigency." It reasoned that concerns that a person may be fleeing the jurisdiction is not a basis for a warrantless search. It went on to note, "there's a remote concern that the victim here could have been confined and injured in the home. There's simply no evidence to suggest that that was the case as opposed to any of the myriad of other possibilities that could exist."

Determining if exigent circumstances exist requires "looking to whether the facts *known to law enforcement at the time*, and the reasonable inferences drawn from those facts, would lead a reasonable person to believe there is a 'compelling need for official action and no time to secure

11

a warrant.' " *Chernobieff v. State*, 168 Idaho 98, 103, 480 P.3d 136, 141 (2021) (first quoting *State v. Pearson-Anderson*, 136 Idaho 847, 849–50, 41 P.3d 275, 277–78 (Ct. App. 2001); and then citing *State v. Smith*, 144 Idaho 482, 485–86, 163 P.3d 1194, 1197–98 (2007)). An example of an exigent circumstance is when there is a need for emergency aid. *State v. Sessions*, 165 Idaho 658, 661, 450 P.3d 306, 309 (2019). "[O]fficers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury. The police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches." *Id.* (internal quotation marks, alterations, and citations omitted).

Here, the officer and the detective went back to the house to perform an additional search for Ruiz after learning new information. That information consisted of Ortiz's phone call to a family member advising that he was in Pine, Idaho and that Ruiz was at the home while contemporaneous cellphone pings indicated that Ortiz's, Ruiz's and one of the children's phones were located in New Mexico. The officer testified that the reason for going back was "there was the concern that, since the family members had been informed that [Ruiz] had stayed behind and her phone was still pinging with the other phones in New Mexico, that Ms. Ruiz might have still been in the house." The detective testified that, with the new information discovered, he "felt like this was almost an emergency situation." The detective also testified that he was concerned Ruiz may have still been in the house somewhere, possibly bound and in the crawl space or the attic. That the detective was concerned Ruiz may have needed aid in the house was further supported by testimony that, during the second search of the house, the detective asked an officer to search the crawl space for Ruiz.

The district court is not entitled to substitute its opinion on exigency for that of law enforcement at the time of the search. *See Smith*, 144 Idaho at 485–86, 163 P.3d at 1197–98 ("The exception applies where the *facts known at the time of the entry* indicate a 'compelling need for official action and no time to secure a warrant.' " (emphasis added) (quoting *Michigan v. Tyler*, 436 U.S. 499, 509 (1978))). The district court did not find that the testifying detective and officer lacked credibility. Their testimony at the suppression hearing demonstrated increasing exigency necessitating law enforcement's swift search of the home. The officer and detective both testified that they believed that, based on new information they had learned, Ruiz could be injured somewhere in the home. This testimony is certainly evidence of exigent circumstances due to a need for emergency aid. *See Sessions*, 165 Idaho at 661, 450 P.3d at 309. That there was no

evidence that Ruiz's confinement in the house was more likely than other possibilities, which was part of the basis for the district court's decision, is irrelevant. The standard for exigency is not that it is the most likely scenario that someone needs emergency aid, but rather that a reasonable inference can be drawn that there is a compelling need for official action. *Chernobieff*, 168 Idaho at 103, 480 P.3d at 141. The detective's testimony that Ruiz's cell phone was pinging in New Mexico despite Ortiz telling his family that she was at the home supported the detective's reasonable inference that she could be harmed or bound in the home, creating a compelling need for action.

Ortiz has failed to establish that he had Fourth Amendment standing. Law enforcement testified that they entered the home, at least in part, to locate and assist Ruiz because they had concerns about her physical safety. For the reasons previously discussed, Ortiz did not have the right to exclude law enforcement from entering the home to check on the wellbeing of a co-owner occupying the home. As such, we affirm the district court's decision denying Ruiz's motion to suppress.

## V. CONCLUSION

For the reasons discussed above, Ortiz did not have standing to challenge the warrantless search of his home. The decision of the district court is affirmed.

Chief Justice BEVAN, and Justices BRODY, MOELLER, and MEYER CONCUR.