# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 46857

STATE OF IDAHO,

    Plaintiff-Respondent,

v.

SHELAINA DANYELL NEIMEYER,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

Filed: May 19, 2020

Karel A. Lehrman, Clerk

THIS IS AN UNPUBLISHED
OPINION AND SHALL NOT
BE CITED AS AUTHORITY

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Thomas J. Ryan, District Judge.

Judgment of conviction for possession of methamphetamine, possession of marijuana, and possession of drug paraphernalia, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Ben P. McGreevy, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Andrew V. Wake, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

Shelaina Danyell Neimeyer appeals from her judgment of conviction for possession of methamphetamine, Idaho Code § 37-2732(c)(1); possession of marijuana, I.C. § 37-2732(c)(3), and possession of drug paraphernalia, I.C. § 37-2734A. Neimeyer contends the district court erred in denying her motion to suppress. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Neimeyer does not dispute the following factual findings in the district court's decision denying her motion to suppress:

> On August 5, 2018 at approximately 2:00 a.m., Officers Thompson and Comeau were dispatched to conduct a welfare check in the parking lot of [a local gas station] in Twin Falls, Idaho. An employee of the gas station had called the

1

police about a car that had been parked in the gas station's parking lot for over an hour with a female occupant inside[, later identified as Neimeyer]. [Neimeyer] had not moved from the vehicle for over a half hour and had been in the gas station earlier purchasing alcohol.

When Officers Thompson and Comeau arrived on scene their police vehicles did not have their emergency lights on. Officers Thompson and Comeau parked their vehicles several dozen feet behind [Neimeyer's] vehicle. The officers approached [Neimeyer's] vehicle with their flashlights illuminated, but they did not draw their weapons. Officer Thompson approached the driver side window of [Neimeyer's] vehicle while Officer Comeau approached on the passenger side.

As Officer Thompson approached the driver side window of [Neimeyer's] vehicle he observed that the vehicle's lights were on and that the key was in the ignition. Officer Thompson asked [Neimeyer] for identification and asked her why she had been in the parking lot for so long. [Neimeyer] explained that she had purchased items for a friend at the gas station and had not left yet because she had been on the phone. Officer Thompson asked if [Neimeyer] had been drinking and [Neimeyer] responded that she had not been. There was an alcoholic beverage can in the center console cup holder, but [Neimeyer] explained that the can was empty and was merely being used as an ashtray. Officer Thompson asked about [Neimeyer's] plans and if there was anything the officers could do for [Neimeyer]. [Neimeyer] responded that she was going to go home and that there was nothing the officers could do for her. [Neimeyer] remarked that she wanted to throw away the can that was being used as an ashtray.

At the time Officer Comeau stated "there's some Fireball right there." Officer Comeau was referencing a bottle of alcohol located in the passenger area of the vehicle. The seal on the bottle had been broken and the bottle was only partially full. [Neimeyer] grabbed the bottle and moved it to the back seat of the vehicle, remarking that she could now travel with the bottle stored on the back seat. Officer Thompson indicated that [Neimeyer] was correct in stating that the bottle could be transported closed in the back seat.

Officer Comeau then asked about a small black container located on the passenger seat. [Neimeyer] stated that the container was empty and had contained "film and stuff . . . from years and years ago." Officer Comeau asked if [Neimeyer] could show the contents of the container to Officer Thompson. [Neimeyer] protested by stating, "Do I really got to? I mean, I haven't done anything wrong." Officer Thompson responded by stating, "Well, we have alcohol in the vehicle now . . . ." [Neimeyer] then offered to "do a test," which [the district court took] to mean a sobriety test based on the context of the conversation. Officer [Thompson] then stated, "That's fine. What's inside of the . . ." at which point [Neimeyer] opened the container and showed the contents to Officer Thompson.

Officer Thompson stated in his affidavit and at hearing that he immediately smelled the odor of marijuana, which he is familiar with through his training and experience. When Officer Thompson shined his flashlight into the container he also stated in his affidavit and at hearing that he observed a green

leafy substance that he recognized as marijuana through his training and experience as a police officer. After opening the container quickly [Neimeyer] then closed the container and put it in her purse.

At that point, Officer Thompson asked [Neimeyer] to step out of the vehicle. The Defendant did so, but took her purse with her. [Neimeyer] was placed in handcuffs. Officer Thompson explained that [Neimeyer] was being detained because of the alcohol found in the vehicle, the possibility that she was under the influence of something, and for the marijuana in the small container. Officer [Thompson] then searched [Neimeyer's] purse, in which he found the black container, which contained a glass end to vape with green and brown residue at the end. In addition, the purse contained small clear baggies containing a green leafy substance which Officer Thompson recognized as marijuana, a small amount of the green leafy substance in the black container, and a zip pouch containing a clear glass pipe with white and brown residue, which Officer Thompson suspected to be used to smoke methamphetamine. Also in the pouch were two plastic baggies containing white residue, which Officer Thompson recognized as methamphetamine, and a small gray pick, which Officer Thompson suspected to be used to clean residue out of pipes used in the smoking of methamphetamine and marijuana.

Officer Thompson then informed [Neimeyer] that she was under arrest for possession of methamphetamine and [Neimeyer] was transported by Officer Comeau to the Twin Falls County Jail for booking. Officer Thompson stayed at the scene to conduct an inventory search of the vehicle, so that the vehicle could be towed. During the inventory search Officer Thompson found a white case, which contained a clear plastic baggie with white and brown particles inside. Officer Thompson placed the baggie into an evidence bag for later testing. After the inventory of the vehicle was complete, the vehicle was turned over to the towing company.

At the police station, Officer Thompson used a NARK II testing kit on the clear glass pipe and the baggie from the white case in the back seat of the vehicle. Both items tested a presumptive positive for methamphetamine. Officer Thompson also tested the green leafy substance in the black container with a NARK II testing kit, which tested a presumptive positive for marijuana. All items were sent to the state lab for further testing.

As a result of this incident, the State charged Neimeyer with possession of methamphetamine, marijuana, and drug paraphernalia. Neimeyer filed a motion to suppress, arguing the officers lacked probable cause to search the small black container. At the suppression hearing, Officer Thompson testified that when he approached Neimeyer's vehicle, he suspected Neimeyer had an open container of alcohol in violation of Twin Falls City Code Section 6-2-6.

The district court issued a written decision denying Neimeyer's motion to suppress. The court ruled that the encounter "began as a care taking interaction" and that once Officer Comeau

"observed the bottle of alcohol in the passenger area of the vehicle, the interaction became investigatory." Despite the encounter's investigatory nature, the court ruled the entire interaction between the officers and Neimeyer was consensual until they handcuffed Neimeyer. The court further ruled that Neimeyer's consent was not rendered invalid by Officer Thompson's statement implying he could arrest Neimeyer for having an open container of alcohol in the vehicle. In support of this ruling, the court quoted Section 6-2-6;[1] ruled that the officers had probable cause under this ordinance to arrest Neimeyer for having an open container of alcohol in the vehicle; and as a result, ruled that Officer Thompson's statement about alcohol in the vehicle did not render Neimeyer's consent invalid. Finally, the court ruled that, even if Neimeyer did not voluntarily consent to opening the black container, the search was valid under the inevitable discovery doctrine.

After the district court's ruling, Neimeyer entered a conditional guilty plea, reserving her right to appeal the court's denial of her motion to suppress. Neimeyer timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

---

[1]     The Twin Falls City Code is published on the City's website. Section 6-2-6(A) provides:

No person shall have in his possession or on his person while occupying, riding in, riding on, or driving a motor vehicle whether upon a highway, street, or bridge or upon public property or private property open to public use, excluding public parks, any bottle, can, or other receptacle which is open, has been opened or the seal of which has been broken, and which contains any alcoholic beverage. The transportation of an alcoholic beverage in a vehicle outside of the passenger compartment shall not be a violation of this section.

4

## III.

## ANALYSIS

Neimeyer contends the district court erred by relying on Section 6-2-6 to deny her motion to suppress. Neimeyer argues the court's conclusion that "[she] voluntarily consented to the search of the small black container was clearly erroneous[] because the officers implied they had probable cause to arrest and search her, even though [S]ection 6-2-6 provided no legal basis to do so," thereby rendering her consent involuntary. Neimeyer's assertion that Section 6-2-6 did not provide a legal basis to arrest her is premised on her contention that the State had the burden to prove the existence of Section 6-2-6 at the suppression hearing but failed to do so and that, as a result, the court lacked authority to rely on this city ordinance to conclude the officers had probable cause to arrest her and, thus, to inquire about the container's contents without rendering her consent invalid.[2]

As an initial matter, the State argues Neimeyer did not object to the district court judicially noticing Section 6-2-6 and, thus, failed to preserve this issue for appeal. Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). "[T]he parties [on appeal] will be held to the theory upon which the case was presented to the lower court." *State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017).

An exception to this rule exits, however, if "the issue was argued to or decided by the trial court." *State v. DuValt*, 131 Idaho 550, 553, 961 P.2d 641, 644 (1998). In this case, Neimeyer argued the officers did not have probable cause to search the black container. The district court ruled that the officers did have probable cause to arrest Neimeyer once Officer Comeau saw an open bottle of alcohol in the passenger compartment of Neimeyer's vehicle in violation of Section 6-2-6 and, as a result, he could inquire about the container's contents without rendering Neimeyer's consent invalid. Because the court sua sponte took judicial notice of Section 6-2-6 to rule probable cause existed, the issue of whether the court had authority to

---

[2]     Neimeyer characterizes the district court's reliance on Section 6-2-6 as making clearly erroneous "factual findings on the content of [S]ection 6-2-6." Whether the court may rely on Section 6-2-6, however, raises an issue of judicial notice. *State v. Doe*, 146 Idaho 386, 389, 195 P.3d 745, 748 (Ct. App. 2008) ("Judicial notice is a mechanism enabling a judge to excuse the party having the burden of establishing a fact from producing formal proof of that fact."); *see also* I.C. § 9-101 (listing facts of which court may take judicial notice); I.R.E. 201 (providing court may judicially notice fact not subject to reasonable dispute).

take judicial notice of and rely on the ordinance is preserved for appeal. *See DuValt*, 131 Idaho at 553, 961 P.2d at 644 (ruling issue preserved for appeal if decided by trial court). Accordingly, we address the merits of Neimeyer's argument.

Neimeyer relies on Idaho case law that provides an officer's inaccurate representation about his ability to obtain a search warrant renders a defendant's consent involuntary. *See, e.g.*, *State v. Smith*, 144 Idaho 482, 489, 163 P.3d 1194, 1201 (2007) ("[A] false or erroneous representation by police regarding the right to obtain a warrant weighs against a finding of voluntariness.") Based on this authority, Neimeyer contends the officers did not have probable cause "on this record" to arrest her because "the existence of a city ordinance is a factual question the trier of fact must prove" and the State never proved the existence of Section 6-2-6. In support of her proposition that the State had the burden to prove Section 6-2-6's existence, Neimeyer relies on *Marcher v. Butler*, 113 Idaho 867, 749 P.2d 486 (1988).

In *Marcher*, the plaintiff filed a premise liability action against the owner of a two-story condominium after the plaintiff fell down the stairs. *Id.* at 868, 749 P.2d at 487. The owner moved for summary judgment, and in response, the plaintiff "tersely mentioned a violation of the Blaine County Building Code, but failed to attach a copy of that ordinance." *Id.* The district court granted summary judgment for the owner. *Id.* On appeal, the plaintiff argued the court should have taken judicial notice of the ordinance. *Id*. at 869, 749 P.3d at 488. The Idaho Supreme Court rejected this argument, concluding Marcher failed to supply the ordinance to the court and her "offhand" mention of the ordinance was insufficient to require the court to judicially notice the ordinance. *Id.* at 870, 749 P.3d at 489. After concluding the court did not err by failing to judicially notice the ordinance, the Court noted in dicta that courts may not take judicial notice of ordinances:

> [T]here appears to be some authority for the proposition that courts may not take judicial notice of municipal ordinances. Section 9-101 of the Idaho Code deals with judicial notice of legislative facts. It states in relevant part: "Courts take judicial notice of the following facts: . . . public and private official acts of the legislature, executive and judicial departments of this state and of the United States." Inasmuch as this statute only permits a court to take judicial notice of legislative acts, it follows that the court may not take judicial notice of city ordinances or of the various codes adopted under them. Such matters must be proved.

*Id.*

This dicta in *Marcher* is inconsistent with the Idaho Supreme Court's decision in *City of Lewiston v. Frary*, 91 Idaho 322, 420 P.2d 805 (1966). In that case, a police court convicted the defendants of violating a city ordinance. *Id.* at 324, 42 P.2d at 807. On an intermediate appeal, the district court likewise convicted the defendants after a de novo trial. *Id.* On appeal to the Idaho Supreme Court, the defendants argued the prosecution failed to plead and prove the ordinance they violated thereby requiring a reversal of their convictions. *Id.* The Court rejected this argument. It noted that "usually local courts will take judicial notice of ordinances in force within their respective jurisdictions, and where this is the case, a reviewing court may take judicial notice of an ordinance judicially noticed in the court below in the same proceedings." *Id.* at 326, 42 P.2d at 809 (internal quotation marks omitted). Further, the Court noted that "it must be remembered that the statutory rule, I.C. [§] 9-101, is not exclusive and is not one of limitation. Facts within common knowledge are not mentioned in the statute, yet universally such facts are judicially noticed by the courts." *Id.* at 325, 42 P.2d at 808; *see also* Idaho Rule of Evidence 201 ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). Accordingly, the Court held that "the police court was required to take judicial notice of the ordinance . . . and that the district court on trial de novo on appeal properly took judicial notice of the ordinance." *Frary*, 91 Idaho at 328, 42 P.2d at 811.

This Court in *State v. Doe*, 146 Idaho 386, 389, 195 P.3d 745, 748 (Ct. App. 2008), addressed the conflict between *Marcher* and *City of Lewiston* and rejected the dicta in *Marcher* as controlling: "the Court's discussion in *Marcher* was dicta and should not be considered as having altered or overruled *sub silentio* the rule established by the Court's earlier decision in *City of Lewiston*." The Idaho Supreme Court's decision in *Lowery v. Bd. of Cty. Comm'rs for Ada County*, 115 Idaho 64, 764 P.2d 431 (1988), supports this Court's rejection of the dicta in *Marcher*. *Lowery* issued after *Marcher*, did not cite *Marcher* but instead relied on *City of Lewiston* to conclude that "although not included in the record, we can take judicial notice of city and county ordinances." *Lowery*, 115 Idaho at 69, 764 P.2d at 436. Based on these authorities, we hold that the district court properly took judicial notice of Section 6-2-6 to rule that the officers had probable cause to arrest Neimeyer for having an open container of alcohol in the vehicle's passenger compartment.

7

Neimeyer's only specific challenge to the district court's ruling that she consented to the search of the black container is her assertion the court could not judicially notice Section 6-2-6. Because this assertion fails and because substantial evidence otherwise supports the court's ruling, we hold the court did not err by concluding Neimeyer consented. As a result, we do not need to address Neimeyer's argument that the inevitable discovery doctrine is inapplicable.

## IV.

## CONCLUSION

The district court properly took judicial notice of Section 6-2-6 and substantial evidence supports its ruling that Niemeyer consented to the search of the black container. Accordingly, we affirm Neimeyer's judgment of conviction and the denial of her motion to suppress.

Chief Judge HUSKEY and Judge LORELLO **CONCUR**.