# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 43553

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2016 Opinion No. 51** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed:  July 27, 2016** |
| | ) | |
| **v.** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **THOMAS TOWNSEND,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Gerald F. Schroeder, District Judge; Hon. John Hawley Jr., Magistrate.

Decision of the district court, on intermediate appeal, affirming the magistrate's denial of motion to suppress, <u>reversed</u>.

Alan Trimming, Ada County Public Defender; Elizabeth Estess, Deputy Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

---

GUTIERREZ, Judge

Thomas Townsend appeals from the district court's decision, on intermediate appeal, affirming the magistrate's denial of his motion to suppress blood draw evidence.  Townsend specifically argues exigent circumstances did not exist to justify his warrantless blood draw.  For the reasons explained below, we reverse the district court.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In March 2013, at approximately 1:30 a.m., an officer pulled over a pickup truck after observing the truck drive the wrong way down a street.  As he approached the truck, the officer smelled a strong odor of alcohol coming from the truck cab.  He noticed that the driver,

1

Townsend, had glassy, red eyes and his speech was slurred. The officer also smelled alcohol on Townsend's breath. Townsend indicated he had just left a bar.

The officer requested that dispatch send another officer to the scene for a DUI investigation. The second officer arrived approximately ten minutes later. Townsend was then instructed to exit the vehicle. Upon Townsend admitting he had consumed seven beers at the bar, he submitted to three standardized field sobriety tests. Townsend failed each of the tests, and he was arrested for suspicion of driving under the influence. Townsend was placed in the backseat of the patrol vehicle and was played the Administrative License Suspension audio, which notifies suspects of the potential penalties for refusing to submit to evidentiary testing.

After waiting fifteen minutes, the officer requested that Townsend submit to a breath test and explained how to do the test. Townsend blew into the breathalyzer but the breath sample was insufficient. The officer again explained how to conduct the breath test, and indicated that he would need a blood sample from Townsend if Townsend did not comply with the breath test. Townsend failed to exhale air on his second attempt and refused to comply with the breath test, stating that the officer would have to draw his blood. Townsend was then transported to jail, where a paramedic drew blood samples from Townsend at 3 a.m.

The State charged Townsend with driving under the influence and failure to purchase a driver's license. Townsend filed a motion to suppress the blood draw evidence, arguing exigent circumstances did not exist to justify his warrantless blood draw. In response, and in addition to the State's brief in objection to the motion, the State filed an affidavit from an officer. The affidavit stated that the time to obtain a warrant for a DUI case in March 2013 would be no less than one hour and thirty minutes. The affidavit also noted that telephonic and expedited warrants were not available in Ada County in March 2013.

The magistrate denied Townsend's motion to suppress, determining that: (1) implied consent was given as a matter of Idaho law;[1] and (2) the anticipated delays in the warrant application process created an exigent circumstance sufficient to justify the warrantless blood draw. Townsend entered a conditional guilty plea, preserving his right to appeal the magistrate's denial of his motion to suppress.

---

[1]    This reasoning is no longer valid. Under current law, an implied consent statute does not justify a warrantless blood draw from a driver who refuses to consent or objects to the blood draw. *State v. Wulff*, 157 Idaho 416, 423, 337 P.3d 575, 582 (2014).

The district court, on intermediate appeal, affirmed the magistrate's denial. In concluding that an exigency existed to justify Townsend's warrantless blood draw, the district court noted the absence of immediate access to warrants in March 2013. The district court additionally considered Idaho's bar to prosecution when a suspected drunk driver has a blood alcohol content below the statutory legal limit--which, due to the natural dissipation of blood alcohol content, may occur when the suspect delays the blood alcohol test long enough. Townsend appeals from the district court's decision.

## II.

## ANALYSIS

When reviewing the decision of a district court sitting in its appellate capacity, our standard of review is the same as expressed by the Idaho Supreme Court. The Supreme Court reviews the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *State v. Korn*, 148 Idaho 413, 415, 224 P.3d 480, 482 (2009). If those findings are so supported and the conclusions follow therefrom, and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure. *Id*. Thus, we do not review the decision of the magistrate. *State v. Trusdall*, 155 Idaho 965, 968, 318 P.3d 955, 958 (Ct. App. 2014). Rather, we are procedurally bound to affirm or reverse the decision of the district court. *Id*.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996).

### A.     Exigent Circumstances

Townsend argues the district court erred in affirming the magistrate's denial of his motion to suppress blood draw evidence. Specifically, Townsend contends exigent circumstances did not exist to justify the warrantless blood draw, and thus the blood draw was unconstitutional.

3

The United States and Idaho Constitutions prohibit unreasonable searches and seizures of persons or property.[2] Warrantless searches are presumed to be unreasonable and therefore violative of the Fourth Amendment. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995); *State v. Smith*, 152 Idaho 115, 118, 266 P.3d 1220, 1223 (Ct. App. 2011). Requiring a person to submit to a blood draw for evidentiary testing is a search and seizure under the Fourth Amendment. *Schmerber v. California*, 384 U.S. 757, 767 (1966). Therefore, warrantless forced blood draws are presumptively unreasonable under the Fourth Amendment. *Missouri v. McNeely*, ___ U.S. ___, ___, 133 S. Ct. 1552, 1558 (2013); *State v. Wulff*, 157 Idaho 416, 419, 337 P.3d 575, 578 (2014). The State may overcome this presumption by demonstrating that a warrantless search fell within a well-recognized exception to the warrant requirement. *Weaver*, 127 Idaho at 290, 900 P.2d at 198; *Smith*, 152 Idaho at 118, 266 P.3d at 1223.

One of the well-recognized warrant requirement exceptions involves exigency. A warrant is not required if "'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 393-94 (1978) (quoting *McDonald v. United States*, 335 U.S. 451, 456 (1948)). Whether an exigency exists is based on the totality of circumstances, which is analyzed case by case. *McNeely*, ___ U.S. at ___, 133 S. Ct. at 1556; *Wulff*, 157 Idaho at 420, 337 P.3d at 579. A warrantless search under the exigent circumstance exception must be strictly circumscribed by the nature of the exigency that justifies the intrusion. *State v. Buterbaugh*, 138 Idaho 96, 99, 57 P.3d 807, 810 (Ct. App. 2002). The exigent circumstance exception does not apply where there is time to secure a warrant. *State v. Robinson*, 144 Idaho 496, 501, 163 P.3d 1208, 1213 (Ct. App. 2007). Indeed, "[i]n those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." *McNeeley*, ___ U.S. at ___, 133 S. Ct. at 1561.

For instance, an officer is justified in performing a warrantless blood draw when he "might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened the destruction of evidence." *Schmerber*, 384 U.S. at 770-71 (internal citation and quotations omitted). The destruction of

---

[2]     Townsend does not argue the Idaho Constitution affords greater protection, so this Court follows the analysis pursuant to the Fourth Amendment to the United States Constitution.

4

evidence in that case was the natural dissipation of the defendant's blood alcohol content because the defendant was suspected of drunk driving. *Id.* The Court implied, however, that the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case. *Id.* The Court based its ruling on other factors relevant to a delay in securing a warrant, such as the fact that the defendant needed to be transported to a hospital for injuries suffered in a car accident, and the fact that the officer needed to investigate the scene of the accident. *Id.*

Recently, the Court clarified its refusal to adopt a per se exception to the warrant requirement when it held that the natural dissipation of alcohol in the blood may support a finding of exigency in a specific case, as it did in *Schmerber*, but it does not do so categorically. *McNeely*, ___ U.S. at ___, 133 S. Ct. at 1563. In *McNeely*, the defendant was involved in a routine DUI case and he refused to submit to breath testing. *Id.* at ____, 133 S. Ct. at 1553-54. The officer did not attempt to secure a warrant before directing a lab technician to draw the defendant's blood. *Id.* at ____, 133 S. Ct. at 1554. The Court determined that the natural dissipation of blood alcohol alone was not enough to constitute an emergency sufficient to meet the exigency exception. *Id.* at ____, 133 S. Ct. at 1561. It noted, though, that "exigent circumstances justifying a warrantless blood sample may arise in the regular course of law enforcement due to delays from the warrant application process." *Id.* at ___, 133 S. Ct. at 1563. For instance, factors "such as the procedures in place for obtaining a warrant or the availability of a magistrate judge," when viewed within the totality of circumstances, may establish an exigency. *Id.* at ___, 133 S. Ct. at 1568. "The relevant factors in determining whether a warrantless search is reasonable, including the practical problems of obtaining a warrant within a timeframe that still preserves the opportunity to obtain reliable evidence, will no doubt vary depending upon the circumstances in the case." *Id.* The analysis is fact intensive and unique to each case. *Id.* at ___, 133 S. Ct. at 1563. Additionally, technological developments "that enable police officers to secure warrants more quickly . . . are relevant to an assessment of exigency. That is particularly so . . . where BAC evidence is lost gradually and relatively predictably." *Id.* at ___, 133 S. Ct. at 1562-63. Thus, the existing procedure for obtaining a warrant is *a factor among the totality of circumstances* that should be considered in determining whether a warrantless blood draw is justified. *Id.* at ___, 133 S. Ct. at 1561-63.

Here, when analyzing the factors used to determine whether an exigency existed to justify the warrantless blood draw, the district court considered the absence of telephonic and expedited

5

warrants in March 2013. An officer testified by affidavit that it would have taken at least one hour and thirty minutes to obtain a warrant in March 2013. The record indicates, however, that a magistrate was on call to issue warrants, but neither officer *attempted* to secure a warrant. Thus, while the process would have been delayed, there is no indication the officers could not have reasonably obtained a warrant to draw Townsend's blood. *McNeely* makes clear that police officers must obtain a warrant when it is reasonable to do so. For instance, in *Sutherland v. State*, 436 S.W.3d 28, 40-41 (Tex. Ct. App. 2014), the court concluded that exigent circumstances did not exist because the officer did not attempt to secure a warrant even though a magistrate was available and on call, and aside from the natural dissipation in the defendant's bloodstream, no other factors demonstrated an exigency in *Sutherland*.

The State, in response to the absence of an attempt to secure a warrant, argues that this case is similar to *Schmerber*. In *Schmerber*, the defendant's blood was drawn at a hospital following a car accident. *Schmerber*, 384 U.S. at 758. Two hours passed between an officer arriving at the scene of the accident, where the officer first saw the defendant, and when the officer again saw the defendant in the hospital. *Id.* at 769. The Court noted that the officer "might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence.'" *Id.* at 770 (quoting *Preston v. United States*, 376 U.S. 364, 367 (1964)). Ultimately, the Court concluded that the warrantless blood draw was appropriate because "time had to be taken to bring the accused to a hospital and to investigate the scene of the accident" and "there was no time to seek out a magistrate and secure a warrant." *Schmerber*, 384 U.S. at 770-71 (1966). Here, because the anticipated minimum time to obtain a warrant in the present case was one hour and thirty minutes (not much less time than the time that elapsed in *Schmerber*), the State argues that the officer in this case also did not have time to secure a warrant. However, this case is different from *Schmerber* because the factors the Court emphasized there included the time spent transporting the defendant to the hospital and the time the officer spent investigating the scene of the accident: "Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant." *Id.* Here, Townsend was not transported to the hospital, nor did the officer need to investigate the scene of an accident because no accident occurred.

6

The district court additionally considered Idaho's bar to prosecution when a suspected drunk driver has a blood alcohol content below the statutory legal limit.[3] The district court noted that by delaying a blood alcohol test long enough to avoid rendering a result at or above the statutory legal limit, the suspected drunk driver can benefit from the bar to prosecution. Thus, according to the district court, the consequence of the gradual and relatively predictable loss of blood alcohol content is heightened in Idaho. However, whether the defendant renders a valid and reliable breath test to determine his alcohol concentration is not a relevant factor for determining whether an exigency justifies a warrantless blood draw. If this were true, then an exigency would exist every time a driver failed to blow at or above a .08,[4] so long as the test was performed before telephonic and expedited warrants were available. *McNeely* expressly prohibits such categorical rules. *McNeely*, ___ U.S. at ___, 133 S. Ct. at 1563. Rather, *McNeely* makes clear that when determining whether an exigency exists, courts must make a "careful case-by-case assessment" and decide "each case on its facts." *Id.* at ___, 133 S. Ct. at 1554-55. Idaho's bar to prosecution for test results below .08 is not a fact that varies between each case. The statutory legal limit is not unique to any one case or even a series of similar cases--it applies in every Idaho case involving a DUI charge.

Here, based on the totality of circumstances, an exigency did not exist to justify Townsend's warrantless blood draw. Townsend was pulled over at approximately 1:30 a.m., and the blood drawn was performed at 3 a.m. In the time that elapsed between the traffic stop and the blood draw, neither officer attempted to reach the on-call magistrate to secure a warrant. As in *McNeely*, this case involves a routine DUI investigation in which no factors beyond the natural dissipation of blood-alcohol concentration suggested that there was an emergency. While the lack of access to expedited or telephonic warrants is a practical and relevant concern, the on-call magistrate alleviates the problem of obtaining a warrant. The absence of other factors to suggest there was an exigency, along with the officers' failure to attempt to secure a warrant, makes Townsend's warrantless blood draw unjustified, and therefore violative of the Fourth

---

[3]    Idaho Code § 18-8004(2) provides that "any person having an alcohol concentration of less than .08 . . . as shown by analysis of his blood, urine, or breath . . . shall not be prosecuted for driving under the influence of alcohol . . . ."

[4]    Pursuant to Idaho Code § 18-8004(1)(a), it is unlawful for any person who has a blood alcohol concentration of .08 or above to drive a motor vehicle.

7

Amendment. The district court erred in affirming the magistrate's denial of Townsend's motion to suppress his blood draw evidence.

**B.     Implied Consent**

The State argues that if this Court concludes the blood draw was not justified by exigent circumstances, we should remand for factual findings and application of the existing law regarding the implied consent exception. Consent, when freely and voluntarily given, is an exception to the warrant requirement. *State v. Smith*, 144 Idaho 482, 488, 163 P.3d 1194, 1200 (2007). The State has the burden of proving, by a preponderance of the evidence, that direct or implied consent was freely and voluntarily given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). An individual's consent is involuntary "if his will has been overborne and his capacity for self-determination critically impaired." *Id.* at 225. Whether consent is voluntary, or was a product of coercion, is a factual determination to be based upon the surrounding circumstances. *Id.* at 229.

Once given, consent may also be revoked because "[i]nherent in the requirement that consent be voluntary is the right of the person to withdraw that consent." *State v. Halseth*, 157 Idaho 643, 646, 339 P.3d 368, 371 (2014). Thus, after a defendant has revoked consent, officers no longer may act pursuant to that initial voluntary consent. *State v. Thorpe*, 141 Idaho 151, 154, 106 P.3d 477, 480 (Ct. App. 2004).

Idaho Code § 18-8002 creates implied consent in specific circumstances, providing that all drivers in Idaho impliedly consent to a warrantless blood draw by taking advantage of the privilege of driving on Idaho's roads. Such consent is revocable. *Wulff*, 157 Idaho at 423, 337 P.3d at 582. The State argues that because this line of cases regarding implied consent and the revocation of implied consent were issued after the magistrate made its ruling on Townsend's motion to suppress, the magistrate was not able to engage in an implied consent analysis to determine whether Townsend revoked his implied consent to a blood draw. Instead, based on the law at the time, the magistrate concluded that Townsend impliedly consented to the blood draw by driving on Idaho's roads. The State therefore requests we remand to the magistrate to make a determination on whether Townsend revoked his implied consent. We agree that the magistrate must make such a finding. Idaho's recent case law regarding revocation of implied consent is retroactive. Court decisions interpreting the Fourth Amendment are applied retroactively unless such decisions represent "a clear break with the past." *United States v.*

8

*Johnson*, 457 U.S. 537, 549 (1982) (quoting *Desist v. United States*, 394 U.S. 244, 248 (1969)). The understanding that consent to search may be revoked is a long-held principle. *See, e.g.*, *United States v. Sanders*, 424 F.3d 768, 774 (8th Cir. 2005) ("Once given, consent to search may be withdrawn."); *United States v. Lattimore*, 87 F.3d 647, 651 (4th Cir. 1996) ("A consent to search is not irrevocable, and thus if a person effectively revokes . . . consent prior to the time the search is completed, then the police may not thereafter search in reliance upon the earlier consent."); *United States v. Dyer*, 784 F.2d 812, 816 (7th Cir. 1986) ("Clearly a person may limit or withdraw his consent to a search, and the police must honor such limitations."); *United States v. Ward*, 576 F.2d 243 (9th Cir. 1978) (holding that consent to a search may be withdrawn); *State v. Rusho*, 110 Idaho 556, 560, 716 P.2d 1328, 1332 (Ct. App. 1986) ("Even if consent has been given, expressly or impliedly, it may be revoked, thereby terminating the authority of the police to continue a warrantless search."). Thus, Idaho's recent decisions regarding the revocation of implied consent do not constitute a clear break from the past. We accordingly reverse the district court's decision on intermediate appeal and remand for a hearing on the matter regarding revocation of Townsend's implied consent.

### III.

### CONCLUSION

The district court erred in affirming the magistrate's denial of Townsend's motion to suppress blood draw evidence because the totality of circumstances does not support a finding of exigent circumstances. We reverse the district court, with instructions to remand to the magistrate to make a finding on whether Townsend revoked his implied consent to the warrantless blood draw.

Chief Judge MELANSON and Judge HUSKEY **CONCUR**.