# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 49034

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: November 29, 2022 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| CESAR RAUL CAMACHO, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Samuel A. Hoagland, District Judge.

Judgment of conviction for eluding a police officer with a persistent violator enhancement, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Jacob L. Westerfield, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kacey L. Jones, Deputy Attorney General, Boise, for respondent.

BRAILSFORD, Judge

Cesar Raul Camacho appeals from his judgment of conviction for eluding a police officer, Idaho Code § 49-1404(2), with a persistent violator enhancement, I.C. § 19-2514, and challenges the district court's denial of his motion to suppress. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Detectives Carter and Holland are members of Boise City's Special Operations Unit (SOU), which investigates suspected drug trafficking. Based on investigations in 2018 and 2019, the detectives believed, among other things, that Camacho was a member of the Mexican Mafia gang, had a criminal history, frequently traveled to Boise for drug trafficking purposes, and was seeking to recover approximately 12 pounds of stolen methamphetamine in Boise. On June 6, 2019, the detectives obtained information indicating that Camacho was in Boise.

1

Believing that Camacho posed an immediate threat of harm to certain individuals potentially involved in stealing the methamphetamine, Detective Holland requested a third-party service provider to use Global Positioning System (GPS) data to "ping" Camacho's cell phone to reveal his real-time location.[1]  The first ping indicated Camacho was in the general location of a hotel on Broadway Avenue in Boise.  A second ping indicated that the first ping was not a "fleeting ping" and that Camacho was in the same location rather than moving.  Officers confirmed with a hotel employee that Camacho was staying at the hotel, obtained his room number, and began surveilling the hotel parking lot and a nearby truck stop.

During this surveillance, Camacho left the hotel in a rental car.  Officers followed him until he pulled into a fast-food restaurant's drive-through lane.  When Camacho saw an officer approaching him, he accelerated through the drive-through lane, hit a police car, and sped away. Thereafter, Detective Holland requested a ping of Camacho's cell phone every fifteen minutes. That evening, officers located and arrested Camacho after he fled on foot.

The following day, officers requested and obtained a search warrant for Camacho's hotel room where they found a loaded firearm, cocaine, heroin, and drug paraphernalia.  Later, a grand jury indicted Camacho for conspiracy to traffic in heroin, conspiracy to traffic in methamphetamine, possession of a controlled substance (cocaine), possession of a controlled substance (heroin), possession of drug paraphernalia, eluding a police officer, and resisting and obstructing.  Further, the State alleged Camacho was a persistent violator.  At the State's request, the district court consolidated Camacho's case for trial with the cases of four other defendants.

Camacho filed a motion to suppress, arguing that the State's "acquisition of cell-site data was an unlawful search under the Fourth Amendment" and that "no exigent circumstances justif[ied] the warrantless search of [his] cell-site data and of his person."  The State responded that pinging Camacho's cell phone was not a search, or alternatively, that if it were a search,

---

[1]     In the district court's decision denying Camacho's suppression motion, the court relies on *United States v. Riley*, 858 F.3d 1012 (6th Cir. 2017), to describe how law enforcement in this case tracked Camacho's real-time location by having the third-party service provider "ping" his cell phone.  In *Riley*, the court explained that one form of cell phone tracking refers to using satellite-based GPS data to reveal a cell phone's latitude and longitude coordinates and that "pinging" in this context refers to "a service provider's act of proactively identifying the real-time location" of a cell phone. *Id.* at 1014.  The parties do not dispute the district court's reliance on *Riley* or that law enforcement in this case requested and received GPS data revealing the real-time location of Camacho's cell phone as described in *Riley*.

exigent circumstances justified the search. The district court held an evidentiary hearing over the course of three days. During the hearing, the court heard the testimony of three law enforcement officers, including Detectives Carter and Holland, and admitted into evidence the affidavit for the search warrant of Camacho's hotel room, a supplemental affidavit, the return of the search warrant, the search warrant, and the audio recordings of jailhouse phone calls related to the stolen drugs.

Following the hearing, the district court issued a written decision denying Camacho's suppression motion. It concluded that "obtaining ping tracking data from [Camacho's] cell phone provider constituted a search that required a warrant" but that "there were exigent circumstances justifying the warrantless search." Camacho conditionally pled guilty to eluding a police officer with a persistent violator enhancement and reserved his right to appeal the denial of his suppression motion. Camacho timely appeals

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

On appeal, Camacho challenges the district court's ruling that exigent circumstances justified pinging his cell phone to disclose his real-time location. The Fourth Amendment protects against unreasonable searches and seizures.[2] *Carpenter v. United States*, ___ U.S. ___, ___, 138

---

[2] Camacho contends the warrantless ping of his cell phone violated both Article I, Section 17 of the Idaho Constitution and the Fourth Amendment to the United States Constitution. Camacho, however, fails to provide any argument why this Court should apply the Idaho Constitution differently than the Fourth Amendment. As a result, this Court relies on judicial interpretation of the Fourth Amendment to analyze Camacho's arguments. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct. App. 1999) (ruling court will rely on judicial interpretation of Fourth Amendment absent "any cogent reason" why it should apply Idaho Constitution differently).

S. Ct. 2206, 2213 (2018). The State may overcome this presumption by demonstrating that a warrantless search fell within a well-recognized exception to the warrant requirement. *Id*. at ___, 138 S. Ct. at 2221. One such exception is when exigent circumstances are so compelling that a warrantless search is objectively reasonable. *Id.* at ___, 138 S. Ct. at 2222. "Such exigencies include the need to pursue a fleeing suspect, protect individuals who are threatened with imminent harm, or prevent imminent destruction of evidence." *Id.* at ___, 138 S. Ct. at 2223; *see also State v. Sessions*, 165 Idaho 658, 661, 450 P.3d 306, 309 (2019) (noting emergency aid exception to protect against imminent injury or aid injured individual); *State v. Holton*, 132 Idaho 501, 504, 975 P.2d 789, 792 (1999) (noting need to protect or preserve life or avoid serious injury is exigent circumstance).

Two essential requirements of the exigent circumstances exception are a compelling need for official action and no time to secure a warrant. *State v. Blancas*, 170 Idaho 631, 636, 515 P.3d 718, 722 (2022). Whether exigent circumstances exist to justify a warrantless search is determined on a case-by-case basis and turns on "whether the totality of circumstances would lead a reasonable officer to believe that immediate action was necessary." *Id.* at 637, 515 P.3d at 723. The nature of the exigency justifying the intrusion must strictly circumscribe the warrantless search. *State v. Townsend*, 160 Idaho 885, 888, 380 P.3d 698, 701 (Ct. App. 2016).

**A.     Search**

Neither the United States Supreme Court nor Idaho appellate courts have previously addressed whether requesting a third-party service provider to ping a cell phone to determine an individual's real-time location based on GPS data constitutes a search for purposes of the Fourth Amendment, and if so, what circumstances justify obtaining this information without a warrant. *See, e.g., Carpenter*, ___ U.S. at ___, 138 S. Ct. at 2220 (declining to express view on whether obtaining GPS real-time data constitutes a search). The State, however, does not challenge the district court's conclusion that "pinging" Camacho's cell phone to determine his real-time location using GPS data was a warrantless search. Thus, for purposes of resolving Camacho's appeal, we assume--without deciding--that it was a warrantless search.

**B.     Exigent Circumstances**

On appeal, Camacho cites several cases, including Idaho case law, addressing whether exigent circumstances justified a warrantless search of a residence or a hotel room. *See, e.g., Sessions*, 165 Idaho at 661-62, 450 P.3d at 309-10 (concluding exigent circumstances did not exist

4

to enter home under emergency aid exception); *State v. Heard*, 158 Idaho 667, 670, 350 P.3d 1044, 1047 (Ct. App. 2015) (concluding exigent circumstances justified warrantless entry into hotel room); *State v. Barrett*, 138 Idaho 290, 294, 62 P.3d 214, 218 (Ct. App. 2003) (concluding exigent circumstances justified entering home). Because these cases address circumstances dissimilar to pinging a cell phone to determine an individual's real-time location, they are not factually instructive.

Courts in other jurisdictions, however, have ruled that exigent circumstances justified pinging a defendant's cell phone without a warrant. These cases identify the types of exigent circumstances justifying such a warrantless search, like threats of violence and gang-related drug trafficking. For example, in *United States v. Hobbs*, 24 F.4th 965, 967 (4th Cir. 2022), the Fourth Circuit concluded exigent circumstances justified pinging a defendant's cell phone because he had a criminal history of violent offenses; was armed; and had threatened imminent harm to numerous people, including his former girlfriend, her child, and law enforcement officers. In *United States v. Banks*, 884 F.3d 998, 1012 (10th Circ. 2018), the Tenth Circuit concluded exigent circumstances justified pinging a defendant's cell phone because officers knew the defendant "was associated with a 'violent street gang,'" "had a history of violent behavior," and had threatened to kill an informant. In *United States v. Caraballo*, 831 F.3d 95, 98, 104 (2d Cir. 2016), the Second Circuit concluded exigent circumstances justified pinging a defendant's cell phone because he was the primary suspect in a brutal murder, had a propensity for violence, possessed numerous firearms, was involved in a drug operation, did not live in the area but rather traveled and stayed in hotels, and posed a threat to undercover informants.

The district court in this case found that Detectives Carter and Holland were aware of similar types of exigent circumstances arising from Camacho's presence in Boise that led them to believe he posed an imminent threat of harm to certain individuals requiring immediate action. *See Carpenter*, ___ U.S. at ___, 138 S. Ct. at 2223 (noting exigency compelling warrantless search includes protecting individuals who are threatened with imminent harm). In support of the district court's findings, the evidence shows that, as members of the SOU, Detectives Carter and Holland have experience, training, and expertise regarding gang-related activities, including drug trafficking, and they have been involved in law enforcement operations related to drug trafficking

5

in the Boise area. One such operation was a "buy/bust" operation[3] that occurred in November 2018. During that operation, officers seized $60,000 during a drug transaction and arrested H.R.

The day after arresting H.R., an officer conducted a welfare check on H.R.'s eleven-year-old daughter, located the girl at her residence, and discovered Camacho hiding in a bathroom. Initially, Camacho claimed that he was the girl's uncle and that he was taking her to California. Later, however, Camacho admitted he was not the girl's uncle but claimed he had her father's permission to take her. Based on the information the girl provided, the officer believed Camacho was involved in drug trafficking and intended to kidnap the girl. Although the officer did not arrest Camacho, the officer obtained and confirmed Camacho's cell phone number.

Later, in January 2019, officers were preparing for another buy/bust operation. During that time, Camacho reported to an undercover officer that "somebody in [the] group [which included the undercover officer] must be cooperating with the police." Further, Camacho disclosed certain facts to the undercover officer indicating Camacho was aware of the tactical specifics of the earlier November 2018 buy/bust operation. This information indicated Camacho had watched and provided "security detail" for that drug transaction, raised concerns Camacho "was possibly aware of the tactical side" of the operation, and was "out the approximately $60,000" seized during the operation.

Then, in May 2019, another drug-related arrest in Boise implicated Camacho in drug trafficking. On May 29, Detective Carter was surveilling the residence of an individual who had successfully eluded officers earlier. During this surveillance, Detective Carter observed a vehicle, which was traveling at a high rate of speed, pull into the alley by the residence and then drive away. Believing that the suspected individual might be in the vehicle, Detective Carter followed the vehicle and requested assistance. Several officers responded to the request and conducted a traffic stop of the vehicle.

The vehicle's driver, Robert Cockerell, had a loaded firearm on his hip. The officers removed the firearm and had Cockerell exit the vehicle. After Cockerell exited, the passenger "jumped into the driver's seat," "accelerated" the vehicle, and "knocked down" and dragged an officer with the vehicle after the officer ordered him to stop at gunpoint. Officers followed the

---

[3] Officer Carter testified that a "buy/bust" operation means undercover officers were "going to purchase narcotics and then arrest the people that they purchased them from right then and there."

6

vehicle and found it crashed into a tree. The passenger, however, had fled the scene. In the vehicle, officers discovered a large amount of cash, methamphetamine, heroin, and a scale. Missing, however, was "a large white grocery bag" Detective Carter had seen earlier "in the pocket of the driver's door." Officers arrested Cockerell, who helped identify the fleeing passenger as Michael Chapman.

The following day, May 30, officers located Chapman and arrested him. Detectives Carter and Holland interviewed Chapman, with whom they were familiar, knowing him to be a gang member and drug dealer in the community. After Chapman initially denied having fled from law enforcement the prior day, he admitted fleeing and claimed he was forced to do so. Chapman explained that "there was 12 pounds of methamphetamine in a location in Boise that was just left there"; he feared "Cesar"; "[p]eople were going to die" because Chapman had been arrested; and Chapman and his family would be "toast," meaning subject to "either great bodily harm or death," if Chapman or Cesar did not recover the drugs. Further, Chapman reported that Cesar "was a Mexican Mafia member" with a tattoo signifying his membership, had been in federal prison, was connected to the Sinaloa Cartel, came "to town one to two times a month for drug drop off and to monitor activity of how drug sales are going," and "would be back in town within a couple days." During the interview, Chapman gave the detectives Cesar's cell phone number, and the detectives understood Chapman to be talking about Camacho.

Shortly after the interview with the detectives, Chapman called H. from jail, told her where the 12 pounds of drugs were located, and asked her to retrieve them. On June 3, Chapman spoke to H. again who reported that the drugs had been stolen from her and that she had been "running for her life" all night.[4] On June 6, Chapman called Camacho from jail. During the call, Chapman told Camacho that H. had the drugs; C. had stolen the drugs from H.; and "people were saying" A. "might have something to do with the 12 pounds [of methamphetamine] being stolen." Meanwhile, Camacho made statements during the call indicating he was presently in Boise. Detectives Carter and Holland were in training at the time of Chapman's call with Camacho. They heard a recording of the call a few hours later, however, and believed that Camacho was presently in Boise and that H., C., and A. were in imminent danger.

---

[4]  Camacho challenges the district court's finding that "[H.] called Chapman" and cites to the record showing instead that Chapman called H. from jail. Regardless, neither party disputes the content of the call.

7

Based on this information, Detective Holland testified he had concerns, particularly about C.'s safety. He testified he based these concerns on his prior knowledge of Camacho, the information obtained during the 2018 and 2019 operations of a cartel connection, the attempted kidnapping, Chapman's "adamant belief" Camacho was connected with the Mexican Mafia and Chapman's fear for his family, the content of the jailhouse phone calls indicating Camacho was in the area, the Mexican Mafia "code of honor" requiring "severe consequences" and "violence" for stealing, and "the potential for another attempted kidnapping or some type of violent act in order to get the money and[/]or drugs back." Similarly, Detective Carter testified that he was concerned "there was an imminent danger to the person who took those drugs" and concerned about "all the history," including the phone call about the stolen drugs, "the drug trafficking organization ties," the attempted kidnapping, and the belief that "there was a possibility that [C.] might be killed or kidnapped." Based on the detectives' concerns of imminent danger to C. and others, Detective Holland requested the third-party service provider to ping Camacho's cell phone to determine his real-time location.

On appeal, Camacho challenges the sufficiency of this evidence as establishing exigent circumstances justifying a warrantless search. He contends "no compelling need" justified pinging of his cell phone. In support, he challenges Chapman's credibility regarding Camacho's gang membership and the detectives' efforts to determine whether Camacho was indeed a gang member. Specifically, Camacho argues that the detectives received "the primary information" about Camacho's "alleged ties to any gang" during their May 2019 interview with Chapman, but "despite [Chapman's] severe credibility issues," the detectives "made no further efforts to obtain additional information on whether [Camacho] was a documented gang member." We disagree, however, with Camacho's assertion that the detectives obtained their "primary information" about Camacho's gang activities from Chapman. To the contrary, the detectives testified to a series of events giving rise to their belief that Camacho was involved in gang-related drug activities, including the November 2018 and January 2019 buy/bust operations. Moreover, Detective Holland specifically testified that the information Chapman provided was "consistent" with the information the detectives had learned from their prior investigations and that Detective Holland believed "the credibility of what [Chapman] was saying was high."

Camacho also criticizes the detectives for not "investigating a violent robbery and a large quantity of methamphetamine being present on the streets" but instead purportedly "waiting" until

8

Camacho was in Boise to act. The record, however, does not support Camacho's assertion that law enforcement was not investigating these matters. Regardless, the lack of any such investigation does not bear on whether Camacho posed an imminent danger when his cell phone was pinged.

Finally, Camacho argues the district court erred by concluding that "law enforcement had reasonable grounds to believe that obtaining a warrant would be impracticable because taking the time to do so would have posed a significant risk to the safety of others and [Camacho] was a flight risk." Challenging this ruling, Camacho asserts "the police had ample time to obtain a warrant." In support, he notes that the detectives "spent 'a couple of hours' gathering an investigative team" and the first ping "did not occur until approximately four hours and thirty minutes after the call between [Camacho] and [Chapman]," thereby suggesting a search warrant could have been obtained within the same timeframe. These facts, however, do not support Camacho's argument that the detectives had "ample time" to obtain a warrant. Rather, these facts show that even when acting expeditiously to locate Camacho without a warrant, the process of concluding he posed an imminent threat of danger and pinging his cell phone took several hours.

We conclude that substantial evidence supports the district court's finding that exigent circumstances justified pinging Camacho's cell phone. Based on the totality of circumstances known to the detectives when they requested the third-party service provider to ping Camacho's cell phone, a reasonable officer would have objectively believed that Camacho posed an imminent threat of danger; immediate action was necessary to protect against imminent harm; and there was not adequate time secure a warrant. *See Blancas*, 170 Idaho at 637, 515 P.3d at 723 (noting whether exigent circumstances justify warrantless search turns on "whether the totality of circumstances would lead a reasonable officer to believe that immediate action was necessary").

## IV.

## CONCLUSION

The district court did not err in denying Camacho's suppression motion. Substantial evidence supports the court's conclusion that exigent circumstances justified pinging Camacho's cell phone without a warrant. Accordingly, we affirm Camacho's judgment of conviction for eluding a police officer with a persistent violator enhancement.

Chief Judge LORELLO and Judge HUSKEY **CONCUR**.

9